JOHN HENDRICKSON, Respondent, *v.* SAMUEL J. HODKIN and JOHN J. RIGLEY, Defendants, Impleaded with PARK EAST OPERATING CORPORATION, Appellant.

Second Department, April 16, 1937.

*Murray G. Jenkins* [*Leo Fixler* with him on the brief], for the appellant.

*Eugene L. Bondy*, for the respondent.

JOHNSTON, J. Plaintiff sustained serious personal injuries as a result of a so-called cancer cure prescribed and administered by defendant Rigley, a layman. This cure was administered by Rigley under the supervision of the defendant Hodkin, a licensed physician. Plaintiff had retained both of them. The treatment was administered to plaintiff while he was a patient of defendant Hodkin in the Park East Hospital, operated by defendant Park East Operating Corporation. The jury rendered a verdict against the three defendants. The hospital alone appeals.

The court charged the jury that the hospital owed the plaintiff the duty of exercising reasonable care for his safety and protection and that in determining whether or not it had discharged that duty the jury may consider the fact that no one in authority inspected the hospital record or chart pertaining to plaintiff, that the case was not reported to the chief of staff, and that no staff meetings were held with reference to it. The jury was further instructed, in effect, that if the performance of these acts would have led to a discovery of the dangers inherent in the treatment administered by plaintiff's doctors, the hospital failed in its duty. In our opinion this was error.

Assuming the hospital was under a duty to exercise such care, the scope of this duty did not extend to the professional treatment administered by plaintiff's own doctors, whether they were licensed or not. The respects in which it is claimed the hospital was derelict all pertain to such professional treatment, with which appellant had no right to interfere. Further assuming the appellant in the respects mentioned was negligent, such negligence must be attributed to its doctors and nurses. The rule is now well settled that a hospital, whether charitable or private, is immune from liability to patients by reason of the negligence of its doctors and nurses with respect to any matter relating to the patient's medical care and attention. (*Matter of Renouf* v. *N. Y. C. R. R. Co.*, 254 N. Y. 349; *Mieryjeski* v. *Bay Ridge Sanitarium, Inc.*, 237 App. Div. 851; *Schloendorff* v. *New York Hospital*, 211 N. Y. 125; *Phillips* v. *Buffalo General Hospital*, 239 id. 188; *Mills* v. *Society of New York Hospital*, 242 App. Div. 245; affd., 270 N. Y. 594.)

The judgment as against the appealing defendant should be reversed on the law, with costs, and the complaint as to it dismissed, with costs.

CARSWELL and TAYLOR, JJ., concur; LAZANSKY, P. J., with whom HAGARTY, J., concurs, dissents as to the dismissal of the complaint and writes for reversal and a new trial.

LAZANSKY, P. J. (dissenting). Defendant hospital is a profit-making organization. It has an attending staff, and also a "courtesy" staff. A physician on the "courtesy" staff may treat and operate on his own patients. Defendant Hodkin was a member of the "courtesy" staff. He was not recommended to plaintiff by the hospital, but plaintiff came to the hospital on his advice.

A hospital that has exercised reasonable care in the selection of its doctors and nurses is not liable for their negligence in the treatment of patients. There is no proof in the case that defendant Hodkin was incompetent, or that the management failed to exercise reasonable care in permitting him to treat and operate in its institution. Is there any duty which such a hospital owes to a patient under the foregoing circumstances? In my opinion, there is. The patient is in the custody of the institution. True, it is not required to pass upon the efficacy of treatment; it may not decide for a doctor whether an operation is necessary, or, if one be necessary, the nature thereof; but it owes to every patient whom it admits the duty of saving him from an illegal operation or false, fraudulent or fictitious medical treatment. If a doctor attached to such an institution performs an operation which he and the hospital administration know is unnecessary, liability would be cast upon the hospital. Likewise, if the doctor and the administration know the operation is illegal. If the hospital knowingly permits a patient to be brought in contact with a contagious disease and he suffers therefrom, the hospital would be responsible. If the hospital knows that a patient is being physically maltreated by doctors, nurses and others, and makes no effort to stay such misconduct, it would be chargeable.

Defendant Rigley, who had no license to practice medicine, was a fraud and a quack. His alleged cancer cure had no merit whatsoever. On the contrary, it was dangerous to human life. The results show that. Defendant Hodkin knew nothing about the cure. He made no investigation of it. The facts fully justify the inference that his sole interest was the receipt of the $3,000 fee; that he was as indifferent to results as he was to method, and that he permitted his position in the hospital to be used as a cloak, cover or pretense for the treatment of the patient by Rigley, who applied the treatments during his almost every day visits to the hospital. The nurses of defendant hospital knew the treatment was in the hands of defendant Rigley, and not of defendant Hodkin.

They accepted orders from defendant Rigley. Nurses are not expected to advise the administration if they are of opinion that a doctor is not using proper methods, for they are under the supervision of the doctors. But here they observed that it was not a doctor who was treating the patient, although the doctor was engaged for that purpose. This was a concern of administration, and not of medical care.

Rigley's treatment inflicted grievous and permanent bodily harm to plaintiff. If the defendant hospital knew, or in the exercise of reasonable care should have known, this knavery was going on, and made no effort to stop it, then, it seems to me, it should be held liable. It cannot ignore such danger to patients at the hands of charlatans, and then successfully plead that it exercised reasonable care in selecting the doctor. There is ample proof in this case, aside from the knowledge of the nurses, from which a jury could find that the administration not only had reason to know, but actually did know, what was going on.

The court charged the jury that the defendant hospital was " obligated to use reasonable care for this man's safety and for his protection;" and, " A private hospital is bound to reasonably protect and safeguard its patients from known dangers and hazards, or from dangers and hazards of which they had notice or as to which they were put upon notice." These were broad and general statements of defendant hospital's obligation as above outlined, but there were no specifications clearly defining its duty and making it understandable to the jury. Furthermore, these general statements of defendant hospital's duty were coupled by the court with statements of other duties, to perform which defendant hospital was not obligated. It was not made clear to the jury under what circumstances defendant hospital would be liable. It should be noted that the cause of action above discussed was not pleaded. There was, however, a different cause of action pleaded and established by the proof. It was alleged in the amended complaint that, in treating plaintiff, defendant Rigley was engaged in the practice of medicine in violation of the Education Law of the State of New York, in that he was not a duly licensed physician or surgeon; that the defendant hospital aided and abetted and permitted such treatment by defendant Rigley with full knowledge thereof, in violation of the provisions of the Education Law and the Penal Law.

Section 1263 of the Education Law provides that the practice of medicine without a license is a misdemeanor. Subdivision 6 provides that in any action for damages for personal injuries or death against a person not licensed for any act or acts constituting the practice of medicine, when such act or acts were a competent producing, proximate or contributing cause of such injuries or death,

the fact that such person practiced medicine without being duly licensed shall be deemed *prima facie* evidence of negligence.

Here, defendant Rigley was not licensed. Defendant hospital knew it. It permitted him to treat plaintiff. Rigley's conduct was in violation of the Education Law. His treatment was the proximate cause of plaintiff's serious injuries. This was negligence under the Education Law. In that the defendant hospital aided and abetted. It was also guilty of negligence. However, the court did not charge the jury as to the responsibility of defendant hospital in this connection.

Plaintiff did not assume the risk of treatment by defendants Hodkin and Rigley regardless of consequence, and was not guilty of contributory negligence. He placed himself in the care of Dr. Hodkin, willing to chance the results of honorable, though doubtfully effective, treatment, but he did not assume that his welfare was in the hands of a pretender and a quack.

Because the first cause of action of the complaint was not submitted to the jury, and because the theory on which the case was presented to the jury was not clearly expounded, there should be a new trial in the interests of substantial justice.

HAGARTY, J., concurs.

Judgment as against the appealing defendant reversed on the law, with costs, and complaint as to it dismissed, with costs.