KRAYNAK, APPELLANT, *v.* YOUNGSTOWN CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE.

[Cite as *Kraynak v. Youngstown City School Dist. Bd. of Edn.,* 118 Ohio St.3d 400, 2008-Ohio-2618.]

(No. 2007–0740—Submitted March 12, 2008—Decided June 5, 2008.)

LUNDBERG STRATTON, J.

## I. Introduction

{¶ 1} Today this court must identify the standard for determining when a person as a matter of law suspects child abuse, thereby triggering a duty to report under former R.C. 2151.421. Because we hold that pursuant to former R.C. 2151.421, in determining whether a person knows of or suspects child abuse for purposes of reporting it to the proper authorities, the standard is subjective, we reverse the judgment of the court of appeals with regard to that issue and

remand the cause to the court of appeals. However, because the appellate court's reversal of the jury verdict and granting of a new trial were based on the combined effect of the jury instruction and inadmissible testimony, we remand to the court of appeals so that court can consider in the first instance whether the error in admitting part of Mercer's testimony alone requires reversal of the jury's verdict, or whether it was harmless error under Civ.R. 61.

## II. Facts

{¶ 2} Donald T. Kraynak, appellee, individually and as the parent and guardian of D.K., a minor, filed suit against appellant Youngstown City School District Board of Education and D.K.'s former teacher, Helen Marino, for their alleged failure to report his abuse during the 1999–2000 school year. Marino was dismissed as a defendant during the course of the trial.

{¶ 3} Testimony at trial revealed that Marino, D.K.'s fourth-grade language-arts teacher in the gifted program, asked the students to keep a creative-writing journal. Once or twice a week, Marino instructed the students to write about no particular topic. The journal was not graded and was only spot-read by Marino because it was used only to practice writing.

{¶ 4} In one of D.K.'s early journal entries, he wrote: "Dear Mrs. Marino. I just wanted to know, do you read what we wright every day wright exakly wright after we wright it?" Marino responded by writing, "not exactly after." Marino testified at trial that she did read D.K.'s September 20, 1999 entry, in which he wrote: "Dear Mrs. Marino. I have a problem, at my mom's apartment my mom abuses me for little things, like, once when we had to go to Mother Goose (which is my baby sisters preschool), my school clothes were in back and [my half-sister] got in back and I started to pound light on the window my mom told me to get in the front and I did the door was open and she hit me and said shut the door cause other grown up's were talking outside, and I shut the door then she started hiting and punching me screaming at me saying what she was going to with your stuff? Then she grabed the bag of my school supplyes and threw them up to me and grabed my school clothes and threw the school clothes with her hand behind them and since her hand was behind the clothes and purposly punched me in the gut." After the entry, D.K. wrote in capital letters, "WARNING!! BUT WHAT EVER YOU DO DON'T TELL MY MOM!!!"

{¶ 5} Marino acknowledged she had read that entry, but she could not recall whether she had talked with D.K. about it. She later stated that she thought she had talked with him about it because she recalled that D.K. "didn't take this journal entry very seriously. He wasn't crying. He wasn't upset. He wasn't scared. * * * He wasn't emotionally upset about it." Marino spoke with D.K.'s other teachers about him, but she never contacted children services, and she never reported his alleged abuse.

{¶ 6} Marino replied to D.K. in his journal, "Ok. Sometimes adults have personal problems that they need to talk to someone about. They sometimes lash out at innocent people with out [sic] meaning to." Marino testified at trial that she did not believe that D.K. was being truthful in his September 20 journal entry about his alleged abuse.

{¶ 7} The jury returned a verdict in favor of the school district, concluding that the preponderance of the evidence did not establish that Marino knew or suspected that D.K. had suffered or faced abuse, and therefore she had no duty to report. The jury also concluded that the school district was not negligent and that D.K.'s injuries were not directly and proximately caused by Marino's negligence or her failure to comply with the reporting statute.

{¶ 8} Kraynak filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court overruled his motions. The Court of Appeals for Mahoning County reversed the judgment of the trial court that the duty to report child abuse under former R.C. 2151.421 depends on the teacher's subjective knowledge or suspicion of abuse. It also reversed the judgment of the trial court that had allowed an expert witness to testify about the contents and interpretation of the statute. The court of appeals remanded the cause for a new trial. However, the appellate court affirmed the trial court's decision to allow Kraynak to present his common-law negligence claims to the jury based on the public-duty special-relationship exception to the general immunity from liability of political subdivisions.

{¶ 9} The cause is now before this court pursuant to the acceptance of a discretionary appeal.

### III. Analysis

{¶ 10} In resolving the standard for determining whether a person as a matter of law suspects child abuse under former R.C. 2151.421, thereby triggering a duty to report, we must first examine the language of the statute. We look to the plain language of the statute to determine the legislative intent. *State ex rel. Burrows v. Indus. Comm.* (1997), 78 Ohio St.3d 78, 81, 676 N.E.2d 519. We apply a statute as written when its meaning is unambiguous and definite. *Portage Cty. Bd. of Commrs. v. Akron,* 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52, citing *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463. Finally, an unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language. *Burrows,* 78 Ohio St.3d at 81, 676 N.E.2d 519.

{¶ 11} The applicable version of R.C. 2151.421(A)(1)(a) provided:

{¶ 12} "No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and *knows or suspects* that a child under

eighteen years of age or a mentally retarded, developmentally disabled, or physically impaired child under twenty-one years of age has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion to the public children services agency or a municipal or county peace officer in the county in which the child resides or in which the abuse or neglect is occurring or has occurred." (Emphasis added.) 147 Ohio Laws, Part III, 4686, 4697.

{¶ 13} At trial, Kraynak submitted proposed jury instructions in which he sought to have the trial court submit the statute itself to the jury. Despite his request, the trial court did not provide the actual statutory language to the jury. In addition, the trial court advised the jury that R.C. 2151.421 employs a subjective standard, and thus the jury was to determine whether Marino herself suspected abuse and not whether a "reasonable person" would so suspect.

{¶ 14} The court of appeals concluded that the trial court had erred in instructing the jury that the relevant standard is subjective. We disagree. After paraphrasing the language of the statute, the trial judge instructed: "The statute sets forth a subjective standard and you must determine whether defendant, Helen Marino, in her mind, knew or suspected [D.K.] suffered or faced a threat of suffering any physical or mental wound, injury, or disability, or condition of a nature that reasonably indicates abuse or neglect of [D.K.]"

{¶ 15} The trial judge's conclusion that the former version of the statute contained a subjective standard is correct. The statute asks whether the school employee knows of child abuse or suspects child abuse. The statute does not ask whether the school employee "knew or should have known" or "suspected or should have suspected" or "knew or had reasonable cause to suspect" that a child had been abused. Rather, R.C. 2151.421(A)(1)(a) simply asks whether the school employee "knows or suspects" that there has been child abuse.

{¶ 16} Beyond the plain language of the statute, the current version of R.C. 2151.421 is instructive in determining what standard the former version required, as well as what the General Assembly intended in amending the statute. The new version of the statute changes the standard from "knows or suspects" (a subjective standard) to "knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect," a clearly objective standard.

{¶ 17} Accordingly, we hold that pursuant to former R.C. 2151.421, in determining whether a person knows of or suspects child abuse for purposes of reporting it to the proper authorities, the standard is subjective.

{¶ 18} In addition to holding that the trial court erred in instructing the jury that the statutory standard was subjective, the court of appeals also found error

in the extent of the testimony of the school district's expert witness, Kathryn Mercer, professor of law at Case Western Reserve Law School. Mercer testified that she has instructed child-welfare workers for approximately 17 years about compliance with the Ohio abuse-reporting law. Mercer testified that, in her view, a mandatory-reporter's knowledge or suspicion of abuse "is a personal judgment that each person must reach * * * based upon their training, education, their knowledge of the abuse, neglect, and dependency statute, the knowledge of the information they're receiving, and the accuracy, the determination whether that information is accurate." Mercer also testified that in determining whether knowledge or suspicion of abuse is present, a mandatory reporter should examine the totality of the circumstances, including "the child's demeanor, the child's behavior, whether there are visible signs of abuse, whether or not the child is truthful."

{¶ 19} Mercer added that the child-abuse-reporting statute "says look at all the circumstances. So if a child—I teach that if a child would say my parent has hit me with a ruler, the social worker must then assess all the circumstances; what's the age of the child, was it appropriately placed, where was that hit, did it cause a—a serious disfigurement. The law actually requires, again, child endangering to be not just a bruise, but a serious disfigurement which is either temporary or permanent, and so we, you know, discuss what does that bruise look like, where was it placed, what was the context for which the child was being disciplined, is the child's report accurate, does the person believe the child. So all of that has to be taken into consideration rather than an automatic response upon hearing a particular fact."

{¶ 20} The court of appeals noted that the first half of Mercer's testimony may have been relevant because she explained her opinion and what she taught her students, but the court of appeals held that Mercer's testimony went too far when she told the jury what the statute allegedly "says." We agree. As the court of appeals observed, contrary to her testimony, R.C. 2151.421 does not state that a person must review the totality of the circumstances. Further, Mercer claimed that "child endangering" requires "serious disfigurement" and "not just a bruise." However, former R.C. 2151.421 does not once mention child endangering and does not require the presence of serious disfigurement. The statute simply requires reporting of any known or suspected, actual or threatened, "physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child." Former R.C. 2151.421(A)(1)(a).

{¶ 21} The court of appeals held that allowing Mercer to interpret for the jury what the statute requires was erroneous. Consequently, the court of appeals concluded that the trial court abused its discretion in allowing Mercer to testify to this extent. We agree.

{¶ 22} This issue was not appealed to this court. Therefore, the Seventh District's holding regarding Mercer's testimony stands. Because the facts in this case are very close, Mercer's extensive and incorrect testimony could have made a difference in the outcome of the trial. Thus, although the court of appeals erred in determining that the statutory standard was objective, the court of appeals' reversal as to Mercer's incorrect testimony stands as an independent ground for reversal.

## IV. Public-Duty/Special-Relationship Exception

{¶ 23} This court also allowed Proposition of Law No. III and held it for the decision of this court in *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, and we stayed the briefing schedule on that issue. As to Proposition of Law No. III, we reverse the court of appeals' holding regarding the public-duty/special-relationship exception as it applies to political subdivisions on the authority of *Rankin*, and hold that the common-law special-relationship exception to immunity does not exist in this case.

## V. Conclusion

{¶ 24} Because we hold that pursuant to former R.C. 2151.421, in determining whether a person knows of or suspects child abuse for purposes of reporting it to the proper authorities, the standard is subjective, we reverse the judgment of the court of appeals with regard to that issue and remand the cause to the court of appeals. Because the appellate court's reversal of the jury verdict and granting of a new trial were based on the combined effect of the jury instruction and inadmissible testimony, we remand to the court of appeals so that court can consider in the first instance whether the error in admitting part of Mercer's testimony alone requires reversal of the jury's verdict, or whether it was harmless error under Civ.R. 61.

Judgment reversed
and cause remanded.

MOYER, C.J., and PFEIFER, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———

Pfau, Pfau & Marando, and John C. Pfau; and Roth, Blair, Roberts, Strasfeld & Lodge and James E. Roberts, for appellant.

Levin & Associates Co., L.P.A., and Joel Levin, for appellee.