KELLEY et al., Appellants,

v.

RUF et al., Appellees.

[Cite as *Kelley v. Ruf*, 181 Ohio App.3d 534, 2009-Ohio-1215.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. C.A. 24257.

Decided March 18, 2009.

Michael E. Edminster; and John F. Myers and Nancy Holland, for appellants.

Donald H. Switzer and Bret C. Perry; and Elizabeth Nocera Davis and Douglas G. Leak, for appellees.

Per Curiam.

## INTRODUCTION

{¶ 1} Nancy Kelley ("Kelley") sued her doctor based on her belief that he had intentionally misrepresented the condition of her gallbladder in order to frighten her into having immediate surgery she did not need. She also alleged that while she was on the surgical table, just prior to surgery, her doctor intentionally rubbed his groin area against her thigh. Kelley sued Walter R. Ruf, M.D., Walter R. Ruf M.D. Inc., and Summa Health System (vicarious liability) for medical malpractice, fraudulent misrepresentation, sexual assault and battery, lack of informed consent, battery, and intentional infliction of emotional distress. She also sued Summa directly for negligent credentialing and retention of Dr. Ruf. Kelley's husband, Campion Kelley, alleged a loss-of-consortium claim based on his wife's claimed injuries. After the trial court granted summary judgment to the defendants in the initial suit, the Kelleys voluntarily dismissed the case and later refiled this action.

{¶ 2} The trial court granted summary judgment to the defendants on each claim except the sexual-assault-and-battery and loss-of-consortium claims. The Kelleys voluntarily dismissed the sexual-assault-and-battery claim under Civ.R. 41(A), and the trial court filed a nunc pro order providing that there was no just reason for delay. The Kelleys then filed this appeal, arguing that the trial court incorrectly granted summary judgment to Summa and incorrectly granted summary judgment to Dr. Ruf and Walter R. Ruf M.D. Inc. on the fraudulent-misrepresentation claim. This court affirms, because the Kelleys have not pointed to any evidence in the record that creates a genuine issue of material fact as to whether Dr. Ruf fraudulently misrepresented Kelley's health when recom-

mending surgery. Thus, the trial court correctly granted summary judgment to Dr. Ruf and his corporation on that claim and to Summa on the negligent-credentialing claim. The Kelleys forfeited their agency-by-estoppel argument by failing to argue it to the trial court. Therefore, the trial court correctly granted Summa's summary-judgment motion for all vicarious-liability claims.

## BACKGROUND

{¶ 3} The parties agree that Kelley visited her primary-care physician, Otto Bernath, M.D., on July 29, 2002. Kelley reported recurrent episodes of abdominal pain, nausea, and vomiting, especially after heavy meals and fried foods. The doctor found right upper quadrant pain and tenderness. According to Dr. Bernath, he ordered some tests and referred Kelley to Dr. Walter R. Ruf, a general surgeon at Summa, because he suspected her problem was caused by her gallbladder.

{¶ 4} When Kelley experienced another episode of pain and nausea later that day, she went to the Summa Health System Emergency Department at Akron City Hospital, but was diagnosed with gas and discharged. Kelley testified that she was contacted by Dr. Ruf's office the following morning and asked to come to his office for a follow-up to her emergency-room visit. Although Dr. Bernath testified that he had referred her to Dr. Ruf, Kelley said that she had not heard of Dr. Ruf before that phone call. In any event, she went to his office, where Dr. Ruf evaluated her and recommended a laparoscopic cholecystectomy (gallbladder removal) for the following day.

{¶ 5} Dr. Ruf performed the surgery on Kelley on July 31, 2002. According to Kelley, when she was on the operating table, but before the anesthetist placed the mask over her face, Dr. Ruf firmly rubbed his groin area against her thigh and hip. Dr. Ruf denies this allegation.

## FRAUDULENT MISREPRESENTATION

{¶ 6} The Kelleys' first assignment of error is that the trial court incorrectly granted summary judgment on their first cause of action, fraudulent misrepresentation. In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121.

{¶ 7} In their first claim for relief, the Kelleys alleged that Dr. Ruf had fraudulently misrepresented that Kelley needed gallbladder surgery. Kelley argued that when she went to Dr. Ruf's office, he intentionally showed her the

wrong radiological film in order to scare her into having surgery to remove her healthy gallbladder. The trial court granted Dr. Ruf's motion for summary judgment on that claim, based on evidence he presented tending to show that Kelley's gallbladder was diseased and the testimony of Kelley's general-surgery expert that Kelley suffered no injuries or damages as a result of the gallbladder surgery.

{¶ 8} The elements of fraud are:

"(a) a representation or, where there is a duty to disclose, concealment of a fact,

"(b) which is material to the transaction at hand,

"(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

"(d) with the intent of misleading another into relying upon it,

"(e) justifiable reliance upon the representation or concealment, and

"(f) a resulting injury proximately caused by the reliance."

*Cohen v. Lamko Inc.* (1984), 10 Ohio St.3d 167, 169, 10 OBR 500, 462 N.E.2d 407, quoting *Friedland v. Lipman* (1980), 68 Ohio App.2d 255, 22 O.O.3d 422, 429 N.E.2d 456, paragraph one of the syllabus. In light of Dr. Ruf's evidence, in order to survive the motion for summary judgment, the Kelleys had to demonstrate that a genuine issue of material fact existed as to the falsity of Dr. Ruf's representation and the injury proximately caused by Kelley's reliance on it.

{¶ 9} In their appellate brief, the Kelleys have argued that Dr. Ruf "concealed the fact that [Kelley] was healthy * * * in an effort to induce her to consent to a surgical procedure that he intended to perform early the very next day." Kelley has argued that Dr. Ruf was at least acting "with utter disregard or recklessness when he told [her] she needed surgery." The Kelleys have, however, failed to cite any evidence in the record to support any of these assertions.

{¶ 10} App.R. 16(A)(7) requires an appellant to support her argument with references to the parts of the record on which she relies. Given the allegations, this court's focus is on the third element of the claim, that is, whether the representation was "made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred." *Cohen*, 10 Ohio St.3d at 169, 10 OBR 500, 462 N.E.2d 407. Kelley has failed to provide any citations to pages of a deposition at which any expert stated that Kelley's gallbladder was healthy when Dr. Ruf removed it. This court has repeatedly held that "[i]t is the duty of the appellant, not this court, to demonstrate [her] assigned error through an argument that is supported by citations to legal authority and facts in the record." See, e.g., *State v. Ashby,* 9th

Dist. No. 06CA0077–M, 2007-Ohio-3118, 2007 WL 1805029, ¶ 26, quoting *State v. Taylor* (Feb. 9, 1999), 9th Dist. No. 2783–M, 1999 WL 61619, *3. In any event, this court's review of the record revealed no support for Kelley's assertion that her gallbladder was healthy.

{¶ 11} The Kelleys similarly failed to support their argument before the trial court. Dr. Ruf's motion for summary judgment included citations of various experts' deposition testimony tending to show that Kelley's gallbladder was diseased. In their brief in opposition to Dr. Ruf's motion for summary judgment, the Kelleys cited Dr. Priebe's deposition for the proposition that the gallbladder was healthy, but did not include specific page numbers other than to advise the court to "pay particular attention to Pg. 30."

{¶ 12} Dr. Paul Priebe was presented as the Kelleys' expert in the fields of general surgery and gastrointestinal endoscopy. At page 30 of his deposition, he testified that Kelley's radiological films, taken before the surgery, show a normal gallbladder. As Dr. Ruf points out in his appellate brief, however, Dr. Priebe also testified that it is within the standard of care for a surgeon to remove a gallbladder that appears normal on radiological studies if the person has symptoms indicative of chronic cholecystitis or biliary colic. Dr. Priebe testified that Kelley's symptoms were consistent with a diagnosis of biliary colic (i.e., pain is caused by the passing of small gallstones that cannot be seen on an ultrasound). Dr. Priebe clarified his opinion by pointing out: "I'm not saying it was unreasonable to recommend gallbladder surgery to her." Thus, the Kelleys' own expert negated one of the essential elements of their fraudulent-misrepresentation claim. The Kelleys have not pointed to any evidence in the record that creates a genuine issue of material fact as to whether Dr. Ruf fraudulently misrepresented Kelley's health when recommending surgery. Therefore, the Kelleys' first assignment of error must be overruled.

## VICARIOUS LIABILITY

{¶ 13} The Kelleys' second assignment of error is that the trial court incorrectly granted Summa Health System summary judgment. The Kelleys sued Summa Health System for alleged negligence in credentialing Dr. Ruf, as well as for vicarious liability for Dr. Ruf's actions. Summa moved for, and was granted, summary judgment on all claims. Summa pointed to evidence in the record that indicated that Dr. Ruf was not its agent or employee and that Kelley's own primary-care physician had referred her to Dr. Ruf. Summa argued that there was no genuine issue of material fact as to whether the hospital could be liable under a theory of agency by estoppel. The Kelleys did not respond with contrary evidence.

{¶ 14} If the moving party meets its summary-judgment burden by identifying specific parts of the record that demonstrate that there are no issues of material fact regarding the essential elements of a claim, the nonmoving party bears a reciprocal burden of setting forth specific facts demonstrating that an issue of fact exists for trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; Civ.R. 56(E). The Kelleys did not meet their reciprocal burden regarding the claims of vicarious liability.

{¶ 15} Although the Kelleys argued agency by estoppel to this court, they did not make that argument or suggest any other theory of vicarious liability in response to Summa's motion for summary judgment in the trial court. As the court pointed out in its order granting Summa summary judgment, the Kelleys focused their argument on Summa's alleged negligent credentialing and retention of Dr. Ruf. By failing to present an agency-by-estoppel argument to the trial court, the Kelleys forfeited it. See *Holman v. Grandview Hosp. & Med. Ctr.* (1987), 37 Ohio App.3d 151, 157, 524 N.E.2d 903. Thus, the trial court correctly granted summary judgment to Summa on the vicarious-liability claims. To the extent that the Kelleys' second assignment of error addresses their claims of vicarious liability, it is overruled.

## NEGLIGENT CREDENTIALING

{¶ 16} Part of the Kelleys' second assignment of error is that the trial court incorrectly granted Summa summary judgment on the negligent-credentialing claim. The Kelleys have argued that Summa violated a direct duty owed to Kelley to protect her from fictitious treatment. The Ohio Supreme Court has stated that a hospital " 'owes to every patient whom it admits the duty of saving him from an illegal operation o[r] false, fraudulent, or fictitious medical treatment.' " *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 259, 553 N.E.2d 1038, reversed on other grounds, *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46, quoting *Hendrickson v. Hodkin* (1937), 250 A.D. 619, 294 N.Y.S. 982, 984–985 (Lazansky, P.J., dissenting). The Kelleys also rely on a Second District Court of Appeals holding that "claims of negligent credentialing encompass both the failure of a hospital to exercise due care in the credentialing process and the hospital's failure to safeguard patients from fictitious treatment." *Phillips v. Burt* (June 14, 1995), 2d Dist. No. 14532, 1995 WL 353861, at *7.

{¶ 17} The Kelleys' negligent-credentialing argument must fail for the same reason that their claims against Dr. Ruf have failed. The Kelleys have not pointed to evidence in the record that creates a genuine issue of material fact as to whether Dr. Ruf's treatment of Kelley was in any way "false, fraudulent, or fictitious." *Albain,* 50 Ohio St.3d at 259, 553 N.E.2d 1038.

■ {¶ 18} Furthermore, as the Kelleys have pointed out, in order to prevail on a negligent-credentialing claim, a plaintiff "must demonstrate that but for the lack of care in the selection or the retention of the physician, the physician would not have been granted staff privileges, and the plaintiff would not have been injured." Id. at paragraph two of the syllabus. Although injury would have been obvious if the treatment had been fraudulent, there is no genuine issue of material fact on the question of injury proximately caused by the treatment in this case. In the face of expert deposition testimony that Dr. Ruf neither violated the standard of care nor caused Kelley any injury, Kelley's own expert, Dr. Paul Priebe, failed to testify that Kelley had been injured by Dr. Ruf's treatment. In fact, he testified that Kelley "had no complications from the surgery" and could not describe any damages caused by Dr. Ruf's treatment. The Kelleys have failed to point to evidence in the record that creates a genuine issue of material fact regarding whether Kelley was injured by Dr. Ruf's medical treatment. To the extent that the Kelleys' second assignment of error addressed the negligent-credentialing claim, it is overruled.

## CONCLUSION

{¶ 19} The Kelleys have not pointed to any evidence in the record that creates a genuine issue of material fact as to whether Dr. Ruf fraudulently misrepresented Kelley's health when recommending surgery. Thus, the trial court correctly granted Dr. Ruf and Walter R. Ruf M.D. Inc.'s motion for summary judgment on the fraudulent-misrepresentation claim. Accordingly, the trial court also correctly granted summary judgment to Summa on the negligent-credentialing claim based on those allegations against Dr. Ruf. Further, the trial court correctly granted Summa summary judgment on the vicarious-liability claims because the Kelleys did not argue this theory in the trial court and have forfeited it. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

SLABY and CARR, JJ., concur.

DICKINSON, P.J., concurs in part and dissents in part.

DICKINSON, Presiding Judge, concurring in part and dissenting in part.

{¶ 20} I agree with the majority's reasoning and conclusions as far as they go. But, because the Kelleys' attempt to voluntarily dismiss the sexual-assault-and-battery claim was a nullity, I would consider the merits of the Kelleys' negligent-credentialing claim against Summa to the extent that it was premised on that pending claim against Dr. Ruf. I disagree with the majority's conclusion affirming the trial court's grant of summary judgment to Summa on the negligent-

credentialing claim to the extent that it was based on the allegations of sexual assault and battery, because I believe there is a genuine issue of material fact regarding whether Summa knew that Dr. Ruf had developed a "pattern of * * * inappropriate behavior." R.C. 2305.251(B)(2)(c). Therefore, I would affirm in part and reverse in part.

## FINAL, APPEALABLE ORDER

{¶ 21} Section 3(B)(2), Article IV of the Ohio Constitution provides that courts of appeals "shall have such jurisdiction as may be provided by law to review * * * judgments or final orders." Under Civ.R. 54(B), a trial court "may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." In January 2008, the trial court granted Summa's motion for summary judgment on all the Kelleys' claims against it. On May 7, 2008, the trial court seemed to have granted summary judgment to Dr. Ruf and Walter R. Ruf M.D. Inc. on all claims against them except claim number three, sexual assault and battery, and claim number eight, Mr. Kelley's loss-of-consortium claim. There was, however, some confusion about the court's treatment of claim number four. Neither the trial court's January nor May 7 judgment entry included Civ.R. 54(B) language, nor did they dispose of all claims against all parties. Therefore, they were not final and appealable.

{¶ 22} On May 12, 2008, the Kelleys attempted to voluntarily dismiss their third claim, with prejudice, under Civ.R. 41(A). On that same day, the trial court entered a nunc pro tunc order, clarifying that it had granted summary judgment to the defendants on claims one, two, four, five, and six in the May 7 entry. In that same order, the trial court wrote that because the Kelleys had voluntarily dismissed their third claim for relief, its January and May rulings had become "final appealable Orders as they enter final judgment in favor of all Defendants." The trial court also included Civ.R. 54(B) language in its nunc pro tunc order, indicating that "[t]here is no just reason for delay." The order did not mention the loss-of-consortium claim that had remained pending after the May 7 judgment entry.

{¶ 23} Under Civ.R. 41(A)(1)(a), a plaintiff "may dismiss all claims asserted by that plaintiff against a defendant by * * * filing a notice of dismissal at any time before the commencement of trial." The rule "does not allow for the dismissal of a *portion* of the claims against a certain defendant." *Pattison v. W.W. Grainger Inc.*, 120 Ohio St.3d 142, 2008-Ohio-5276, 897 N.E.2d 126, ¶ 18; see also *Dohme v. Eurand Am. Inc.*, 121 Ohio St.3d 277, 2009-Ohio-506, 903 N.E.2d 1174, ¶ 3. Thus, the Kelleys' attempt to dismiss only the sexual-assault-and-battery claim was a nullity because they attempted to dismiss some, but not all, of their claims

against Dr. Ruf and Walter R. Ruf M.D. Inc. *Pattison,* 120 Ohio St.3d 142, 2008-Ohio-5276, 897 N.E.2d 126, at ¶ 19. If the Kelleys wanted to abandon their sexual-assault-and-battery claim, the proper procedure would have been to seek leave of court or consent of the opposing parties to amend their complaint under Civ.R.15(A). Id.

{¶ 24} As the Kelleys' attempt to voluntarily dismiss the sexual-assault-and-battery claim was a nullity, that claim and the loss-of-consortium claim remain pending in the trial court. See id. at ¶ 19, citing *Kildow v. Home Town Improvements,* 5th Dist. No. CT2001–0057, 2002-Ohio-3824, 2002 WL 1729936, at ¶ 11. Despite the fact that these claims are still pending in the trial court, however, the Kelleys have appealed from a final, appealable order because the trial court's May 12 judgment entry included Civ.R. 54(B) language. Therefore, this court has jurisdiction to consider this matter.

## HOSPITAL LIABILITY FOR PHYSICIAN'S SEXUAL MISCONDUCT

{¶ 25} The Kelleys' second assignment of error is that the trial court incorrectly granted summary judgment to Summa on the negligent-credentialing claim. That claim was based both on the Kelleys' allegation that Dr. Ruf had fraudulently misrepresented Kelley's condition and that he had inappropriately touched her in a sexual manner while she was on the surgical table. The Kelleys argued that Summa was negligent in renewing Dr. Ruf's credentials when it knew or should have known that he had a history of reported offensive sexual behavior.

{¶ 26} Summa has argued that the Kelleys have not provided sufficient evidence to overcome the statutory presumption in favor of the hospital. R.C. 2305.251(B)(1) provides that a hospital "shall be presumed to not be negligent" in credentialing a physician if the hospital proves that at the time of the credentialing decision, the hospital was accredited by the Joint Commission on Accreditation of Healthcare Organizations. R.C. 2305.251(B)(1)(a). Summa presented an affidavit of Patricia Enos, indicating that Summa Health System has been so accredited since 1953. The Kelleys did not challenge that evidence.

{¶ 27} Under R.C. 2305.251(B)(2), the presumption of non-negligence may be rebutted only by proof of certain circumstances including, among others, that the hospital, "sufficiently in advance to take appropriate action, knew that a previously competent individual had developed a pattern of incompetence or otherwise inappropriate behavior, either of which indicated that the individual's staff membership, professional privileges, or participation as a provider should have been limited or terminated prior to the individual's provision of professional care to the plaintiff." R.C. 2305.251(B)(2)(c). The Kelleys argued to the trial court that proof that the hospital either knew or should have known that a physician has developed a pattern of incompetence or otherwise inappropriate behavior

rebuts the R.C. 2305.251(B)(1) presumption. The trial court, however, disagreed, holding that R.C. 2305.251(B)(2)(c) requires that a hospital have actual knowledge of such a pattern of behavior. This court will not add to a statute words that the legislature did not include. See *Kraynak v. Youngstown City School Dist. Bd. of Edn.*, 118 Ohio St.3d 400, 2008-Ohio-2618, 889 N.E.2d 528, ¶ 15; *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 237, 36 O.O. 554, 78 N.E.2d 370. R.C. 2305.251(B)(2)(c) requires proof that the hospital actually knew that the credentialed individual had developed a pattern of incompetence or otherwise inappropriate behavior.

{¶ 28} Summa moved for summary judgment, pointing to the results of the trial court's in camera review of Summa's credentialing file for Dr. Ruf. The in camera inspection revealed "no complaints or disciplinary matters regarding inappropriate sexual contact with any patient at any time." Summa argued that the Kelleys could not point to any evidence in the record that would rebut the statutory presumption of non-negligence.

{¶ 29} In response, the Kelleys cited the deposition of their hospital administration expert, Robert Brueckner. Brueckner testified to various "red flags" that Summa should have investigated to ensure that it was credentialing a competent doctor, including "an extraordinary and inordinate number of claims" against Dr. Ruf. Although Brueckner did not know the precise allegations in each case, he knew they included repeated allegations of sexual misconduct involving other medical-care personnel. Brueckner testified that Summa should have investigated the details of each case, especially those involving payouts to plaintiffs, each of which would have been included in the results of Summa's mandatory inquiry to the National Practitioner's Data Bank. Brueckner further testified that in light of the public nature of the repeated allegations and the fact that many doctors worked at both Akron General and Akron City Hospitals, it was "inconceivable" that Summa would not have known that Dr. Ruf resigned his privileges from Akron General Medical Center in 2000, allegedly in lieu of discipline stemming from sexual-harassment allegations. The trial court held that "Brueckner's testimony falls short of evidence of actual knowledge by Summa as required by the statute."

{¶ 30} In addition to the Brueckner deposition, the Kelleys cited certified copies of various complaints filed against Dr. Ruf as evidence of Summa's negligence in credentialing him. Among those complaints were two sexual-harassment, assault, and battery lawsuits filed in Summit County by three separate plaintiffs. They were each filed less than three years before Dr. Ruf treated Kelley. The trial court also considered the testimony of Dr. Ruf, indicating that Summa knew about his litigation history. The trial court granted

Summa summary judgment, ruling that Summa's knowledge of the lawsuits was not sufficient to overcome the statutory presumption in Summa's favor.

{¶ 31} R.C. 2305.251(B)(3) provides that "[i]f the plaintiff fails to rebut the presumption[,] * * * upon the motion of the hospital, * * * the court shall enter judgment in favor of the hospital * * * on the claim of negligent credentialing." Summa argued, based on this provision, that the trial court was required to enter summary judgment on its behalf because the Kelleys "[could not] rebut the presumption with evidence that satisfie[d] the requirements of R.C. § 2305.251(B)(2)." Under R.C. 2305.251(B)(2), the presumption "may be rebutted only by proof by a preponderance of the evidence."

{¶ 32} A determination of whether a party's proof reaches the standard of a preponderance of the evidence necessarily requires a weighing of that evidence. Weighing evidence is forbidden at the summary-judgment stage. *Stewart v. Urig*, 176 Ohio App.3d 658, 2008-Ohio-3215, 893 N.E.2d 245, ¶ 10, citing *Harry London Candies Inc. v. Bernie J. Kosar Greeting Card Co.* (Feb. 6, 2000), 9th Dist. No. 20655, 2002 WL 185305, *3. " 'Rather, the court must evaluate the evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party.' " Id., quoting *Harry London Candies*, 2002 WL 185305, at *3. Civ.R. 56(C) provides that "summary judgment shall not be rendered unless it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made."

{¶ 33} In this case, the question is whether, construing the evidence most strongly in the Kelleys' favor, a reasonable jury could find by a preponderance of the evidence that Summa knew that Dr. Ruf "had developed a pattern of * * * inappropriate behavior * * * which indicated that [his] staff membership [or] professional privileges * * * should have been limited or terminated prior to [his] provision of professional care to [Kelley]." R.C. 2305.251(B)(2)(c). A reasonable jury could find that Summa's knowledge of two sexual-assault-and-battery lawsuits filed against Dr. Ruf by three separate plaintiffs within three years of his treatment of Kelley is sufficient to overcome the presumption in Summa's favor.

{¶ 34} I believe that there is a genuine issue of material fact as to whether Summa knew that Dr. Ruf had developed a pattern of inappropriate behavior. Therefore, I believe that the trial court should not have granted Summa's motion for summary judgment on the Kelleys' negligent-credentialing claim based on the allegations of sexual assault and battery. I would reverse the trial court's grant of summary judgment to Summa on the negligent-credentialing claim to the extent that it was based on the pending claim of assault and battery by Dr. Ruf.