# IN THE COURT OF APPEALS OF IOWA

No. 20-0802
Filed April 28, 2021

**ANDREW LENNETTE, Individually and on behalf of C.L., O.L., and S.L., Minors,**
　　　Plaintiffs-Appellants/Cross-Appellees,

**vs.**

**GRACE C. MAE ADVOCATE CENTER, INC.,**
　　　Defendant-Appellee/Cross-Appellant.
_____

　　　Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly, Judge.

　　　A plaintiff appeals the order granting summary judgment in favor of the defendant on claims of negligence, breach of fiduciary duty, and interference with the parent-child relationship. **AFFIRMED.**

　　　Martin Diaz, Swisher, and Natalie H. Cronk, Iowa City, for appellants.

　　　Mark A. Schultheis and Haley Y. Hermanson of Nyemaster Goode, P.C., Des Moines, for appellee.

　　　Heard by Doyle, P.J., and Mullins and May, JJ.

**DOYLE, Presiding Judge.**

Andrew Lennette, individually and on behalf of his minor children, appeals the order granting summary judgment in favor of Grace C. Mae Advocate Center (GCM) on claims of negligence, breach of fiduciary duty, and interference with the parent-child relationship. He claims the court erred in finding GCM immune from liability as a matter of law, arguing a genuine issue of material fact exists as to whether GCM acted in bad faith by reporting suspected child abuse allegedly committed by Andrew against his youngest child. He also claims that GCM failed to report a claim of child abuse it suspected or should have suspected against the children's mother. GCM cross-appeals, arguing it is entitled to summary judgment on the independent basis of lack of causation.

**I. Background Facts and Proceedings.**

Andrew and Holly Lennette are the parents of C.L., and O.L., and S.L. Andrew filed for divorce from Holly in September 2014. Holly engaged GCM to provide therapy for the children because she was concerned about how they were handling the divorce. Andrew did not learn the children were in therapy at GCM until one month later when the court entered a temporary order granting Andrew and Holly joint legal custody and joint physical care.

S.L. began therapy at GCM in January 2015 with Kyle Votroubek, a licensed social worker who also provided therapy for C.L. and O.L. After S.L.'s first session, Holly emailed Votroubek a six-page, single-spaced document outlining her concerns about the children, including concerns about their sexualized behavior and possible sexual abuse by Andrew. But at her next therapy session, S.L. told

Votroubek that no one had touched her in her "private areas" aside from C.L. and O.L. hitting her in the crotch.

One week after telling Votroubek her concerns, Holly told GCM therapist Bekah Andrews[1] that S.L. had recently reported sexual abuse by Andrew and that physical evidence corroborated S.L.'s statements. Andrews instructed Holly to contact the hospital emergency room, and she separately reported the suspected abuse to the Iowa Department of Human Services (DHS). The allegations led the juvenile court to remove the children from Andrew's care. The court limited Andrew's contact with his children to supervised visits[2] until December 2015, when the court determined the abuse allegations were unfounded and it expunged the founded report.

In 2016, the DHS investigated allegations that Holly mentally abused the children. Ultimately, the allegations were not confirmed. The September 2016 decree dissolving the marriage of Andrew and Holly granted Andrew sole custody of the children.

Andrew filed the present action against GCM in January 2017, claiming negligence, breach of a fiduciary duty, and interference with the parent-child relationship.[3] GCM moved for summary judgment, claiming immunity from liability

---

[1] Although Andrews had never been engaged in counseling with the children before Holly informed her of Andrew's alleged abuse, S.L. began going to therapy with Andrews instead of Voboutrek shortly after due to a belief that S.L. would be more comfortable with a female therapist.

[2] Although Andrew began supervised visits with the C.L. and O.L. in February 2015, he had no contact with S.L. until July 2015, with supervised visits beginning the following month.

[3] Andrew also named three DHS employees and St. Luke's Hospital as defendants. Andrew dismissed his claims against St. Luke's Hospital after reaching a settlement. The district court severed the claims brought against the

under Iowa Code chapter 232 (2017) and challenging the evidence regarding causation. The district court granted summary judgment on Andrew's claim regarding GCM's failure to report abuse by Holly that it suspected or should have suspected. It also granted summary judgment on Andrew's individual claims of negligence and breach of fiduciary duty, finding Andrew had no relationship with GCM. But the court denied summary judgment on the negligence and breach-of-fiduciary-duty claims brought on behalf of the children, finding sufficient evidence showed a dispute over whether GCM acted in bad faith and whether its acts were a proximate cause of injury to the children. On GCM's motion, the court reconsidered its ruling, found no evidence of bad faith, and ultimately granted summary judgment on all claims. After the court denied Andrew's motion to reconsider, Andrew filed a notice of appeal and GCM filed a notice of cross-appeal.

**II. Scope and Standard of Review.**

We review summary judgment rulings for correction of errors at law. *See Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015). Summary judgment is appropriate when the only disagreement is over the legal consequences that flow from the undisputed facts. *See id.* We will affirm the grant of summary judgment if, viewing the facts and all inferences that may be taken from them in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. *See id.* at 7-8.

---

DHS employees from the claims against GCM after granting GCM's motion for summary judgment to "enable [Andrew] to directly and more quickly appeal the dismissal."

**III. Discussion.**

The Iowa legislature has determined that "[c]hildren in this state are in urgent need of protection from abuse." Iowa Code § 232.67. To that end, it has enacted laws

> to provide the greatest possible protection to victims or potential victims of abuse through encouraging the increased reporting of suspected cases of abuse, ensuring the thorough and prompt assessment of these reports, and providing rehabilitative services, where appropriate and whenever possible to abused children and their families which will stabilize the home environment so that the family can remain intact without further danger to the child.

*Id.* One provision of the law requires members of specific professions to report a reasonable belief that a child has suffered abuse. *Id.* § 232.69(1)(a). A mandatory reporter who knowingly fails to report a suspected case of child abuse is civilly liable for damages caused by that failure. *See id.* § 232.75(2). But for those who make a report in good faith, the law provides qualified immunity from civil or criminal liability. *See id.* § 232.73(1); *Nelson*, 867 N.W.2d at 7. We construe these provisions liberally. *See Nelson*, 867 N.W.2d at 9; *McCracken v. Iowa Dep't of Human Servs.*, 595 N.W.2d 779, 784 (Iowa 1999) ("Clearly, therefore, the provisions relating to child abuse reporting, investigation, and rehabilitation— sections 232.67 through 232.77—are remedial in nature and deserve from us a liberal construction.").

Andrew alleges GCM is liable for its role in the investigation of allegations that he abused S.L. and for failing to report a suspected case of child abuse perpetrated by Holly. He also challenges the grant of summary judgment on his standalone claims for negligence and breach of fiduciary duty. We address each claim in turn.

**A. Allegations of abuse by Andrew.**

We first address Andrew's claim that GCM is liable for its role in the DHS's investigation of allegations that Andrew abused S.L. Andrew claims the district court erred in finding GCM immune from liability. GCM argues that even if it is not immune from liability, Andrew has failed to show its actions were a proximate cause of harm to the children.

The purpose of the qualified immunity provision of Iowa Code section 232.73 is to encourage those who suspect child abuse to report it and to encourage those who assist in a child abuse investigation to provide information without fear of litigation. *See Nelson*, 867 N.W.2d at 7-8. "The statute applies the same good-faith immunity to both those who report suspected abuse and those who assist in investigations initiated by others." *Id.* at 8. Whether a party has qualified immunity is a legal question that may be resolved on summary judgment. *See id.* at 7.

> Summary judgment is an important procedure in statutory immunity cases because a key purpose of the immunity is to avoid costly litigation, and that legislative goal is thwarted when claims subject to immunity proceed to trial. *See Plumhoff v. Rickard*, [572] U.S. [765], [772-73] (2014) ("[T]his [immunity] question could not be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irretrievably lost."); *Hlubek v. Pelecky*, 701 N.W.2d [93,] 98 [(Iowa 2005)] (noting statutory immunity removes the "'fear of being sued'" and affirming summary judgment (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982))). Indeed, in *Hlubek*, we recognized the defendants' observation that "statutory immunity, like common-law immunity, provides more than protection from liability; it provides protection from even having to go to trial in some circumstances." 701 N.W.2d at 96. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

*Id.*

Resolution of whether a party has qualified immunity hinges on whether a defendant has acted in good faith, using a subjective measure. *See id.* at 8. In other words, the determination of good faith "rests on a defendant's subjective honest belief that the defendant is aiding and assisting in the investigation of a child abuse report." *Id.* at 8 (citation omitted). Good faith requires honesty of intent, and diligence has no bearing. *See id.* It is not enough show carelessness; a plaintiff must show a defendant acted dishonestly. *See id.* And our supreme court has made clear that a defendant responding in good faith to child-abuse inquiries "is entitled to immunity from claims alleging not only negligence, but the willful, wanton, or reckless conduct."[4] *Id.* at 9. The question before us then is whether the evidence, viewed in the light most favorable to Andrew, generates a fact question as to whether GCM or its employees acted dishonestly in reporting a suspicion that Andrew abused S.L. or in assisting the DHS in its investigation. *See id.* at 10 ("To avoid summary judgment, the [plaintiffs] needed evidence generating a genuine issue of material fact that [the defendant] acted dishonestly . . . .").

Andrew argues the district court got it right in its initial summary judgment ruling when it found the evidence generated a fact question regarding whether GCM acted in bad faith. The district court reached that conclusion by finding "an inference of dishonesty" in the contents of a March 2015 letter Dr. Patti Gilbaugh, GCM's executive director, wrote to the DHS regarding the abuse allegations. The court based its inference mainly on Dr. Gilbaugh's recommendation that Andrew

---

[4] "If the legislature wanted to exclude from section 232.73 claims alleging reckless or willful misconduct, it would have said so, as it has in other statutes providing immunity for persons acting in good faith." *Id.* at 10.

have no contact with S.L. because S.L. was "struggling with acute stress, which is the early on-set of Post Traumatic Stress Disorder," a diagnosis the court found "is entirely absent from S.L.'s medical records."[5] But the court reversed this finding on GCM's motion to reconsider based on notes made by the DHS investigator in the child protective services child abuse assessment summary stating that in a March 12 phone call, Andrews recommended no visits between Andrew and S.L. because Andrews felt it would be detrimental to S.L.'s therapeutic progress. Because the court had previously found "no evidence of bad faith or dishonesty by" Andrews, it determined that the discrepancies that gave rise to the inference of dishonesty in Dr. Gilbaugh's letter were "extraneous and have no bearing on application of Iowa Code section 232.73(1)." The court could only trace the children's injuries to their separation from Andrew, and because Andrews recommended that separation in good faith, it found GCM is immune from liability and granted its motion for summary judgment in its entirety.

Andrew challenges the district court's finding that S.L.'s therapist recommended no contact between he and S.L. He claims deposition testimony by the therapist disputes the DHS worker's notes. But that testimony only shows the therapist had little memory of the events that occurred three and one-half years earlier. But nothing in the therapist's testimony contradicts the notes made by the

---

[5] The court also provided two less compelling reasons for inferring Dr. Gilbaugh's bad faith. One was the "[a]pparent contradictions between Dr. Gilbaugh's deposition testimony and insurance records" regarding when GCM provided therapy to Holly, but the court explained this was "not at all a clear contradiction" because the records could be attributed to other services GCM provided Holly. The court also found "Dr. Gilbaugh's representation to the DHS that the letter was the product of a team approach" gave rise to an inference of dishonesty because it appeared she had written the letter on her own.

DHS worker, which the court found provides "a contemporaneous record" of their conversation. Without evidence to the contrary, the record supports the finding that S.L.'s therapist recommended against visits between father and daughter in March 2015 and that the recommendation was made in good faith.

Andrew also claims that GCM does not qualify for statutory immunity because GCM disputes assisting the DHS in investigating a report of child abuse. He points to a footnote in GCM's brief in support of its motion for summary judgment in which it states, "Defendant does not concede that GCM aided or assisted DHS in its investigation of Andrew Lennette." This statement does not nullify any claimed immunity. Clearly, Andrew seeks to hold GCM responsible for information it provided during the child abuse investigation. It is disingenuous to argue that GCM is not entitled to immunity because GCM describes its contact with the DHS during the investigation as "minimal."

Andrew also claims that the court erred by rejecting evidence that GCM sought to deceive him in assessing whether there was evidence of bad faith. He claims that Dr. Gilbaugh was dishonest in representations she made to him. But, as stated above, the court connected the injury here—the children's lack of contact with their father—to a recommendation made by S.L.'s therapist in good faith. Therefore, any bad faith on the part of Dr. Gilbaugh is not the proximate cause of the children's injury.

We find no error in the court's grant of summary judgment in favor of GCM on the claim regarding GCM's involvement in the investigation of abuse allegations against Andrew based on GCM's qualified immunity. Because we affirm summary

judgment on this basis, we need not consider GCM's alternative argument regarding lack of causation.

### B. Failure to report abuse by Holly.

Andrew also claims that GCM is liable under Iowa Code section 232.75(2) for failing to report suspected child abuse by Holly. That section states, "Any person, official, agency, or institution required . . . to report a suspected case of child abuse who knowingly fails to do so . . . is civilly liable for the damages proximately caused by such failure or interference." Iowa Code § 232.75(2). The district court held liability would not attach merely by showing GCM and its employees "'should have known' of mental abuse by Holly." The district court instead interpreted section 232.75(2) to require that Andrew present evidence showing GCM actually suspected Holly of abuse and willfully failed to report it.

Andrew contends the court interpreted section 232.75(2) too narrowly by demanding the higher level of proof. He acknowledges that the use of the term "knowingly" in section 232.75(2) "raise[s] the question whether liability attaches only to a knowing disregard of suspected abuse." But he notes that section 232.69 requires GCM to report child abuse that it "reasonably believes a child has suffered," Iowa Code § 232.69(1)(b), which he claims is an objective standard. On this basis, Andrew asks us to attach liability to GCM's failure to report abuse by Holly because a reasonable person would have suspected it, rather than require he show GCM actually suspected abuse.

The definition of "knowingly" requires an actor to be "engaged in prohibited conduct with the knowledge that the social harm that the law was designed to prevent was practically certain to result." *Knowingly*, *Black's Law Dictionary* (11th

ed. 2019). The prohibited conduct here is failing to report child abuse that one "reasonably believes a child has suffered." Iowa Code § 232.69(1)(b). The social harm section 232.75 is designed to prevent is further injury to abused children. It stands to reason that GCM could only be "practically certain" that failing to report Holly for child abuse would cause the children to suffer further injury if it actually suspected Holly of abusing the children. *Cf. State v. Winders*, 366 N.W.2d 193, 195 (Iowa Ct. App. 1985) (considering the use of "knowingly" in a criminal statute and observing that it requires "something more than carelessness or lack of inquiry" (quoting 22 C.J.S. *Criminal Law* § 31(3) at 111 (1961))). We agree that GCM can be held liable under section 232.75(2) only by showing it suspected Holly of committing child abuse and failed to report it; failing to report abuse that it should have suspected is not enough.[6] But regardless of the standard applied, the DHS twice investigated child abuse allegations that concerned these children and were unable to confirm any child abuse occurred.[7] Because no evidence supports a

---

[6] Typically, there are two types of statutes that require report of child abuse. *See* R. Keith Perkins, *Domestic Torts: Civil Lawsuits Arising from Criminal Conduct with Family Relationships* § 13:17, Westlaw DOMTORTSCL (database updated Dec. 2020). The first triggers a duty to report when there is "reasonable cause to believe" that abuse has occurred, which is an objective standard. *Id.* The other triggers a duty to report when one knows or suspects that abuse has occurred, "a less stringent, subjective standard, which can allow the reporter to shield his or her poor judgments." *Id.*; *accord Kraynak v. Youngstown City Sch. Dist. Bd. of Educ.*, 889 N.E.2d 528, 531 (Ohio 2003) (noting a statutory amendment changed the standard for reporting child abuse "from 'knows or suspects' (a subjective standard) to 'knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect,' a clearly objective standard"). Iowa is one of two states that imposes a duty to report based on a "reasonable belief" that a child has suffered abuse. *See* Perkins, *supra*, at app. E. Eleven other states impose a duty if there is "reason to believe" or "reason to suspect" abuse. *See id.*

[7] Although the DHS's first investigation involved allegations of abuse perpetrated by Andrew, the investigation would not be limited to Andrew and S.L. The DHS

finding that GCM knowingly failed to report suspected abuse, the district court did not err in granting summary judgment in GCM's favor.

### C. Remaining claims.

Finally, Andrew challenges the grant of summary judgment on his standalone claims of professional negligence and breach of fiduciary duty. He argues the court erred in concluding that GCM did not owe him a duty of care and in finding GCM is immune from liability for the children's injuries.

Assuming without deciding that GCM owed a duty both to Andrew individually and to the children, their claims against GCM must fail based on GCM's qualified immunity under Iowa Code section 232.73. Even if GCM breached legal duties to Andrew and the children, the claims fail because the alleged injuries all stem from the same conduct—the separation of father and children during the investigation of the child abuse allegation. Because GCM is immune from liability for that conduct, we affirm the grant of summary judgment in favor of GCM on all claims brought by Andrew and his children.

**AFFIRMED.**

---

was required to perform a safety and risk assessment, as well as to evaluate the child's home environment, including any other children in the same home as the parents or anyone else responsible for the child's care. *See* Iowa Code § 232.71B(4)(a)(1), (2). Presumably, a thorough investigation into a child abuse allegation would require some scrutiny of the person making the allegation, including an assessment of the person's credibility and any interest that person may have in the outcome of the investigation, particularly when that person is embroiled in a contentious dissolution of marriage proceeding.