SCHELLING ET AL., APPELLEES, *v.* HUMPHREY; COMMUNITY HOSPITAL OF

WILLIAMS COUNTY, APPELLANT.

[Cite as *Schelling v. Humphrey,* 123 Ohio St.3d 387, 2009-Ohio-4175.]

*Negligent credentialing — Medical malpractice — Bifurcation of claims —*
    *Plaintiffs may pursue negligent-credentialing claim against hospital when*
    *doctor is no longer amenable to suit for medical malpractice because of*
    *bankruptcy.*

(No. 2007-2202 — Submitted October 7, 2008 — Decided August 26, 2009.)

APPEAL from the Court of Appeals for Williams County, No. WM-07-001,

2007-Ohio-5469.

_____

**CUPP, J.**

**{¶ 1}** This case presents the issue of whether a plaintiff can pursue a
negligent-credentialing claim against a hospital without a prior finding that the
plaintiff's injury was caused by the negligence of an independent-contractor
physician, when the physician who is the subject of the negligent-credentialing
claim has filed for bankruptcy protection.

**{¶ 2}** Plaintiffs, Loretta and Brent Schelling, sued Dr. Stephen
Humphrey for medical malpractice arising out of two surgeries he performed on
Loretta Schelling's feet at the Community Hospital of Williams County. The
Schellings also sued the hospital for negligently granting staff privileges to
Humphrey.

**{¶ 3}** After Humphrey filed a petition in bankruptcy, the Schellings
dismissed their claims against him without prejudice. The hospital then moved to
dismiss the negligent-credentialing claim, arguing that to prevail upon such a
claim, the Schellings must first show that Loretta Schelling's injury was caused

by Humphrey's negligence. The trial court granted the motion to dismiss, but the Sixth District Court of Appeals reversed. The appellate court held that the element of the doctor's negligence could be proven without the doctor being named as a party in the case. The hospital sought review in this court, and we accepted the hospital's appeal.

{¶ 4}   Because the physician's bankruptcy filing impeded the Schellings from pursuing their claim against the physician through no fault of their own, we conclude that in the unusual circumstances of this case, the Schellings may pursue their negligent-credentialing claim against the hospital by first proving that Humphrey was negligent and that his negligence was the proximate cause of Loretta Schelling's injury.

# I

*A*

{¶ 5}   Loretta Schelling saw defendant Humphrey for foot pain. To address her foot pain, he performed two tarsal tunnel release surgeries on her heels, one on January 23, 2003, and the other on February 20, 2003, at defendant-appellant hospital. Schelling alleged that she has continued to experience foot pain and has suffered a permanent and partially disabling condition. The Schellings sued Humphrey and the hospital, alleging that Loretta Schelling's ongoing foot pain was the result of complications from the two surgeries Humphrey had performed and that Humphrey had committed malpractice in those surgeries. Brent Schelling also alleged a claim of loss of consortium.

{¶ 6}   The Schellings then amended their complaint to assert a negligent-credentialing claim against the Community Hospital of Williams County. The Schellings alleged that the hospital failed to adequately review and evaluate Humphrey's education, character, and fitness to practice medicine and his past performance as a doctor and that the hospital's negligent granting of staff privileges to Humphrey caused Loretta Schelling's injuries.

**{¶ 7}** Humphrey and the hospital denied the allegations. The hospital moved to bifurcate the negligent-credentialing claim and the Schellings' medical-malpractice claim against the doctor. The hospital argued that the negligent-credentialing claim did not become ripe until the doctor's negligence was determined, so the trial should be bifurcated and the negligent-credentialing claim stayed until the Schellings obtained a finding of negligence against the doctor. The trial court granted the motion to bifurcate the trial over the Schellings' opposition but denied the motion to stay the negligent-credentialing claim.

**{¶ 8}** Humphrey then filed a petition for bankruptcy. Upon receiving notice of that petition, the trial court stayed the proceedings in this case in accordance with the automatic stay of claims in a pending bankruptcy case required by Section 362(a), Title 11, U.S.Code. Thereafter, the Schellings dismissed their action against Humphrey without prejudice on October 30, 2006. (No document reflecting the terms of any settlement of the claim against Humphrey with the bankruptcy trustee was filed in this case, although the Schellings acknowledged that a "settlement has been reached to some extent with the Bankruptcy Trustee for Dr. Humphrey."[1]) The Schellings then requested that the stay of the common pleas court action be lifted, given the dismissal of Humphrey from the case, and the trial court granted the motion. The bankruptcy court later granted Humphrey a discharge in bankruptcy. By that order, any attempt to collect a discharged debt from Humphrey was prohibited. See generally Section 524(a)(2), Title 11, U.S.Code. (The parties do not dispute that the discharge applied to the Schellings' claims against Humphrey.)

**{¶ 9}** After the stay was lifted in the trial court, the hospital moved to dismiss the negligent-credentialing claim. The hospital argued that, to its knowledge, the bankruptcy court had not found that Humphrey was negligent in

---

1. No issue of contribution or indemnity is before us in this case.

his treatment of Loretta Schelling and that Humphrey had not admitted negligence, and without such a finding, the negligent-credentialing claim could not be established. The trial court granted the motion to dismiss, holding that without a finding or an admission that the doctor was negligent, the Schellings could not proceed on the negligent-credentialing claim. The Schellings appealed.

*B*

{¶ 10} The Sixth District Court of Appeals reversed. That court concluded that the Schellings were not precluded from maintaining their negligent-credentialing claim because they could establish the element of the doctor's negligence even if the doctor was not a party to the case. *Schelling v. Humphrey*, 6th Dist. No. WM-07-001, 2007-Ohio-5469, ¶ 16-17. The court of appeals rejected the hospital's argument that a finding of the doctor's negligence is a legal prerequisite to a negligent-credentialing claim. Id. at ¶ 18. The hospital appealed to this court, and we granted review. 117 Ohio St.3d 1423, 2008-Ohio-969, 882 N.E.2d 444.

**II**

{¶ 11} The issue in this case is whether a plaintiff can proceed on a negligent-credentialing claim against a hospital without a prior finding, either by adjudication or stipulation, that the plaintiff's injury was caused by the physician's malpractice.

*A*

{¶ 12} This issue requires us to review the general principles in our cases involving the relationship between an independent doctor and the hospital when the doctor has been granted staff privileges. The parties do not dispute that Humphrey was an independent contractor, not an employee of the hospital.

{¶ 13} Doctors with staff privileges generally have the right to admit their own private patients to the hospital and the right to use the hospital's facilities. *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 256, 553 N.E.2d 1038, fn. 5,

citing Classen, Hospital Liability for Independent Contractors: Where Do We Go from Here? (1987), 40 Ark.L.Rev. 469, 478, fn. 44, overruled in part on other grounds by *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46. While the hospital has the power to grant and revoke staff privileges and establish policies and procedures regarding patient care, "accredited hospitals must allow their staff physicians 'to provide patient care services independently within the scope of their clinical privileges.' " *Albain*, 50 Ohio St.3d at 256, 553 N.E.2d 1038, quoting Joint Commission on Accreditation of Hospitals, Accreditation Manual for Hospitals: 1986 Edition (1985) 101.

{¶ 14} Ohio law requires hospitals to set standards and procedures to be applied. See R.C. 3701.351(A). But "only licensed physicians, not hospitals, are permitted to practice medicine or surgery in this state." *Albain*, 50 Ohio St.3d at 259, 553 N.E.2d 1038, citing R.C. 4731.41.

{¶ 15} A hospital does not need "to constantly supervise and second-guess the activities of its physicians," or to " 'pass upon the efficacy of treatment' " or " 'decide for a doctor whether an operation is necessary.' " Id. at 259, 553 N.E.2d 1038, quoting *Hendrickson v. Hodkin* (1937), 250 App.Div. 619, 621, 294 N.Y.S. 982, 984-985 (Lazansky, J., dissenting), reversed (1937), 276 N.Y. 252, 11 N.E.2d 899. Nor is a hospital an insurer of the skills of the private doctors to whom it has granted staff privileges. Id. at paragraph two of the syllabus.

{¶ 16} This court's jurisprudence recognizes generally that an employer is not vicariously liable for the negligence of an independent contractor, since the employer has no right to control the mode and manner used by the independent contractor to perform the work. *Clark*, 68 Ohio St.3d at 438, 628 N.E.2d 46; see also *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 18. Accordingly, a hospital's mere granting of privileges to a doctor, which the hospital may later revoke under its procedures, does not permit a court to hold the

hospital liable for the doctor's negligent acts under a theory of respondeat superior, or vicarious liability. *Albain*, 50 Ohio St.3d 251, 553 N.E.2d 1038, paragraph one of the syllabus.

{¶ 17} However, we also have held that a hospital has a direct duty to grant and continue staff privileges only to competent doctors. Id. at paragraph two of the syllabus. Thus, a hospital has a duty to remove "a known incompetent." Id. at 258.

{¶ 18} To prove a negligent-credentialing claim, a plaintiff injured by the negligence of a staff doctor must show that but for the lack of care in the selection or retention of the doctor, the doctor would not have been granted staff privileges, and the plaintiff would not have been injured. *Albain*, 50 Ohio St.3d 251, 553 N.E.2d 1038, paragraph two of the syllabus.[2]

{¶ 19} The parties to this case do not dispute that to recover against a hospital on a negligent-credentialing claim, the plaintiff must establish the underlying medical malpractice of the doctor. The required element of the plaintiff's injury having been caused by the doctor's malpractice goes to the question of whether the *hospital's* alleged negligent credentialing of the doctor proximately caused the plaintiff's injury. "Although medical malpractice claims against the doctor and negligent credentialing claims against the hospital are separate causes of action, * * * both causes of action fail without proof that the physician's failure to abide by ordinary standards of care proximately caused the patient's harm." *Browning v. Burt* (1993), 66 Ohio St.3d 544, 566, 613 N.E.2d 993 (Moyer, C.J., concurring in part and dissenting in part).

*B*

---

2. This case arose before the April 9, 2003 effective date of Sub.S.B. No. 179, 149 Ohio Laws, Part II, 3596, 3602, which amended former R.C. 2305.25, now R.C. 2305.251, to provide for rebuttable presumptions applicable to negligent-credentialing claims against a hospital. The amended statute is not before us.

{¶ 20} The parties sharply dispute *when* a doctor's malpractice must be determined in regard to a negligent-credentialing claim. The hospital contends that the doctor must be found negligent before a negligent-credentialing claim can proceed against the hospital. The Schellings argue that the doctor's negligence may be proved in the same case and at the same time as the negligent-credentialing claim against the hospital—a case within a case. The parties also dispute whether the hospital should be required to defend against an allegation that an independent-contractor doctor committed malpractice when the doctor is not (and cannot be made) a party to the case. Compare *Schelling v. Humphrey*, 6th Dist. No. WM-07-001, 2007-Ohio-5469, ¶ 18 ("Determining that staff physician negligence must be proven as an element of a negligent-credentialing claim against an employer does not interpose a legal requirement to name the staff physician as a defendant and prove the negligence claim in the same complaint") and *Davis v. Immediate Med. Servs., Inc.* (Dec. 12, 1995), 5th Dist. No. 94 CA 0253, 1995 WL 809478, *7, reversed in part on other grounds (1997), 80 Ohio St.3d 10, 684 N.E.2d 292 (finding no abuse of discretion in bifurcating the medical-malpractice issue and the negligent-credentialing issue at trial when doctors and hospital were named parties, reasoning that "the matter * * * *did not become ripe* as to the issue of negligent credentialing until and if medical negligence was found on behalf of appellee [doctor]"[emphasis added]).

1.

{¶ 21} The hospital contends that the trial court properly dismissed this case on the basis that a prior finding of negligence is a legal prerequisite to maintaining a negligent-credentialing claim. The hospital relies in part on Chief Justice Moyer's partial dissent in *Browning*, 66 Ohio St.3d at 566, 613 N.E.2d 993, in which he opined that "*Albain* requires that the underlying malpractice of the physician be proven before the plaintiff can recover damages against the hospital for its own negligence [in credentialing the physician]."

**{¶ 22}** But *Browning* did not address the issue we are called upon to decide in this case—whether a doctor's medical malpractice must be determined before a hospital may be called upon to defend against a negligent-credentialing claim. In *Browning*, the plaintiffs sued two doctors for medical malpractice and a hospital for the negligent credentialing of the doctors. 66 Ohio St.3d at 545, 613 N.E.2d 993. The plaintiffs obtained a default judgment—i.e., a previous finding of malpractice—against one doctor, but the other doctor remained a party. Id. at 554, 613 N.E.2d 993, fn. 10. We held that an action against a hospital for bodily injury arising out of the negligent credentialing of a doctor is subject to the two-year statute of limitations in R.C. 2305.10 rather than the one-year statute in R.C. 2305.11 that is applicable to medical-malpractice actions. Id. at paragraphs three and four of the syllabus. Chief Justice Moyer dissented in part, reasoning that "[w]ithout an underlying harm to the hospital's patient through medical malpractice, an action against the hospital for negligent credentialing will never arise." Id. at 566. The Chief Justice thus opined that a negligent-credentialing claim was subject to the same one-year statute of limitations as a medical claim, not the two-year statute of limitations as a bodily-injury claim. The ruling in *Browning* regarding the statute of limitations for a negligent-credentialing claim does not answer the question of *when* a finding that a plaintiff's injury was caused by a doctor's medical malpractice must be made in regard to the negligent-credentialing claim.

**{¶ 23}** Nor did *Browning* hold that a negligent-credentialing claim can be established without the doctor being a party in the case, as the court of appeals in this case determined. *Schelling*, 2007-Ohio-5469 at ¶ 14. As noted above, in *Browning*, one of the doctors was still a party, and a default judgment had been issued against the other doctor on the plaintiffs' medical-malpractice claim. 66 Ohio St.3d at 554, 613 N.E.2d 993, fn. 10. Thus, *Browning* does not answer the question here—whether the Schellings can establish the independent-contractor

doctor's malpractice, for the purposes of a negligent-credentialing claim, without the doctor remaining a party in the action and without a prior finding of the doctor's negligence.

{¶ 24} The hospital argues that it would be inappropriate to require hospitals to defend against a claim of an independent-contractor doctor's negligence when there has been no prior finding of malpractice and when the doctor is not a party to the case. The hospital claims that such a requirement would be inconsistent with *Comer* and *Albain*. *Comer* held that agency by estoppel imposes vicarious liability on a hospital only when the independent-contractor physician has been found liable. *Albain* held that a hospital may not be held vicariously liable under respondeat superior for a doctor's negligence merely because the hospital granted privileges to the doctor. But the only claim against the hospital in this case is for negligent credentialing, not agency by estoppel. The Schellings are not arguing that the hospital is vicariously liable for the doctor's negligence.

{¶ 25} The hospital and its amici also contend that the effect of the court of appeals' ruling, which allowed the Schellings to proceed with their negligent-credentialing claim without the physician being a named party, is to require the hospital to defend the medical-negligence claim against Humphrey even though the hospital did not direct or control his treatment of Schelling. Cf. *Albain*, 50 Ohio St.3d at 259, 553 N.E.2d 1038. The hospital asserts that it is inequitable to require it to defend against Humphrey's negligence because he is no longer a party to the case and has no incentive to cooperate in the defense.[3]

2.

---

3. The hospital asserts that due to the expiration of the statute of limitations to sue for medical malpractice, Humphrey can no longer be sued. That issue is not before us today. The hospital also asserts that Humphrey no longer practices medicine, a matter that does not appear in the record of this case.

**{¶ 26}** In a negligent-credentialing case, when the doctor is or has been amenable to suit, either the doctor ordinarily will have been found liable for medical malpractice in a prior proceeding or the claim against the doctor for medical malpractice will be joined to the claim against the hospital for negligent credentialing. Thus, the hospital would not be required to defend against a negligent-credentialing claim before the physician's malpractice has been determined, either in a prior proceeding, or as the first part of the case against both the doctor and the hospital.

**{¶ 27}** The bifurcation of a negligent-credentialing claim and the underlying medical-malpractice claim avoids the problems of jury confusion or prejudice that may result from admitting evidence of prior acts of malpractice in a combined trial on both claims. Evidence of prior acts of malpractice by the doctor may be relevant to a negligent-credentialing claim, see *Albain*, 50 Ohio St.3d at 258, 553 N.E.2d 1038, but presents the risk of unfair prejudice in determining whether the doctor committed malpractice, see Evid.R. 403(A).

**{¶ 28}** Bifurcation also allows a negligent-credentialing claim against a hospital to be dismissed if the plaintiff does not prevail on the malpractice claim against the doctor. If the fact-finder determines that negligence of the doctor was not the proximate cause of the plaintiff's injury, then a hospital's grant of staff privileges to a doctor is not the cause of the plaintiff's injury, as required by *Albain*. 50 Ohio St.3d 251, 553 N.E.2d 1038, paragraph two of the syllabus ("a plaintiff injured by the negligence of a staff physician must demonstrate that but for the lack of care in the selection or the retention of the physician, the physician would not have been granted staff privileges, *and the plaintiff would not have been injured*" [emphasis added]).

3.

**{¶ 29}** This case presents an unusual fact pattern in which the doctor (Humphrey) is no longer amenable to suit and the Schellings were prohibited

10

from pursuing a claim against him shortly after they sued him, initially because of the automatic stay in place after he filed his bankruptcy petition. See Section 362(a), Title 11, U.S.Code (generally barring commencement or continuation of actions against the bankruptcy debtor). The bankruptcy court's order discharging Humphrey's debts also notified claimants that they could not attempt to collect any debts that had been discharged. The Schellings did not present any document memorializing a settlement with the bankruptcy trustee of the Schellings' malpractice claim against Humphrey, but their lawyer represented at oral argument that the trustee had paid them a percentage of the bankruptcy estate. The parties do not dispute that there was no finding in the bankruptcy proceeding that Humphrey was negligent in treating Loretta Schelling, nor did they dispute that Humphrey did not contest the Schellings' claim of medical malpractice in the bankruptcy proceeding.

{¶ 30} Under the unusual circumstances of this case, where the bankruptcy proceedings impeded the Schellings from joining the physician as a party, we conclude that the Schellings should be permitted to prove that Humphrey committed medical malpractice and that the alleged malpractice caused the Schellings' injury, as an element of their negligent-credentialing claim against the hospital. We have held that a negligent-credentialing claim against a hospital is not one for vicarious (or secondary) liability for the doctor's (primary) liability for medical malpractice and that it stems from a hospital's direct duty to grant and continue staff privileges only to competent doctors. *Albain*, 50 Ohio St.3d 251, 553 N.E.2d 1038, paragraphs one and two of the syllabus; *Browning*, 66 Ohio St.3d at 556, 613 N.E.2d 993. Thus, Humphrey's present lack of amenability to suit does not in and of itself extinguish the Schellings' negligent-credentialing claim against the hospital. Accordingly, the Schellings should be permitted to present their claim that the hospital's alleged negligent credentialing of Humphrey caused their injuries.

**{¶ 31}** Consistent with our analysis in this opinion, however, bifurcating the determination of whether Humphrey committed medical malpractice and the Schellings' negligent-credentialing claim against the hospital would appropriately allow the fact-finder to determine whether Humphrey was negligent in his medical treatment of Loretta Schelling *before* the hospital must defend against the rest of the negligent-credentialing claim at trial. Only if the Schellings prevail on the issue of Humphrey's alleged malpractice should the rest of their negligent-credentialing claim against the hospital proceed.

### III

**{¶ 32}** Accordingly, in the usual case, either a plaintiff must obtain a prior determination that a doctor committed medical malpractice and that the malpractice proximately caused the plaintiff's injury or the doctor will be a party to the case that includes the negligent-credentialing claim against the hospital. However, in the unusual circumstances of this case, Humphrey, the doctor, is no longer amenable to suit because of the bankruptcy stay and discharge, and the plaintiffs, through no fault of their own, cannot maintain their malpractice claim against him. Therefore, the Schellings are permitted to pursue their negligent-credentialing claim against the hospital, as discussed above.

**{¶ 33}** For the reasons stated in this opinion, the judgment of the court of appeals is affirmed, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Judgment affirmed.

MOYER, C.J., and PFEIFER and O'CONNOR, JJ., concur.

LUNDBERG STRATTON, O'DONNELL, and LANZINGER, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 34}** I respectfully dissent.  I believe that the majority is making an exception to the law merely because of the "unusual fact pattern" of this case, i.e.,

the allegedly negligent doctor is no longer amenable to suit because any debt to these plaintiffs has been discharged in bankruptcy. Consequently, the hospital is burdened with defending an allegation of negligence against a doctor who is not a hospital employee but rather is a nonparty with no stake in the outcome and no duty to cooperate or participate in the defense of the case.

{¶ 35} Furthermore, the majority ordered bifurcation—a tacit acknowledgement that a finding of the doctor's negligence, or lack thereof, must be made *prior* to proceeding on the remaining elements of the negligent-credentialing claim. As a result, the hospital is forced to defend a separate, albeit related, allegation of negligence against a nonparty doctor before the negligent-credentialing claim is ripe. I believe that this outcome requires the hospital to become an insurer of the doctor, a result that is contrary to *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038, overruled in part on other grounds, *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435,628 N.E.2d 46, in which we held that a hospital is not an insurer of the skills of a private physician.

{¶ 36} The plaintiffs dismissed the doctor in this action. Unfortunately, he is no longer amenable to a suit because of the bankruptcy discharge. I believe that in the absence of a prior determination that he committed medical malpractice that proximately caused the plaintiff's injury, the plaintiff is unable to maintain a negligent-credentialing claim against the hospital. The unusual facts of this case do not justify creating an exception to the law for these plaintiffs and placing a burden, not authorized by law, upon the hospital to defend an action against a nonparty so that the plaintiffs may pursue their action against the hospital.

{¶ 37} Consequently, I dissent.

O'DONNELL and LANZINGER, JJ., concur in the foregoing opinion.

_____

Williams DeClark Tuschman Co., L.P.A., Chad M. Tuschman, and Peter O. DeClark, for appellees.

Reminger Co., L.P.A., and Jeanne M. Mullin, for appellant.

Bricker & Eckler, L.L.P., Catherine M. Ballard, and Anne Marie Sferra, urging reversal for amici curiae, Ohio Hospital Association and Ohio Osteopathic Hospital Association.

_____