Ferrara, John S., J.
BACKGROUND
On November 1, 2011, the plaintiffs, Julio Rabelo (“Rabelo”), brought this medical malpractice action against the defendants, Ronald Nasif, M.D. (“Dr. Nasif j, Parkway Orthopedics and Sports Medicine, Inc., and Milford Regional Medical Center, Inc. (“Milford Regional”), and others. The claim against the defendant, Milford Regional (Count III) is captioned and pleaded as a “negligent credentialing” claim, as are the claims against the two “other” defendants, John Doe and Jane Roe (Count IV). The defendant, Milford Regional, now moves to bifurcate the plaintiffs negligent credentialing claim against it and to stay all discovery on that claim until there has been an adjudication of the claim against Dr. Nasif. For the reasons set forth below, Milford Regional’s motion is DENIED.
DISCUSSION
I. Negligent Credentialing
First, the defendant, Milford Regional, notes that “there is no common law or statutory cause of action in Massachusetts sounding in negligent credentialing.” (Defendant’s Memorandum of Law, p. 2.) However, the defendant cites a Superior Court decision that at least implicitly recognizes such a claim, Dejesus v. Nasif et al., wherein the judge allowed a motion to bifurcate a negligent credentialing claim and stay discovery. SUCV 10-4281-A (January 17, 2012) (Troy, J.) (bifurcating a negligent credentialing claim and staying it until resolution of the underlying medical malpractice claim against this same physician, Dr. Nasif).
It appears that while the tort of “negligent credentialing” has not been explicitly recognized here as it has been in some thirty states, it has not been found invalid either. Such a claim is similar to a claim of negligent hiring or retention, torts which have been recognized as viable claims in Massachusetts. Foster v. Loft, Inc., 26 Mass.App.Ct. 289, 290 (1988). The distinction is that a physician may not be an employee of a hospital, but may merely enjoy “privileges,” i.e., the opportunity to see and treat patients at the hospital.
The doctrine of negligent hiring provides that an employer whose employees are brought in contact with members of the public in the course of the employer’s business has a duty to exercise reasonable care in the selection and retention of employees. Id. Negligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment. Id. at 291. In order to make a case of negligent hiring or retention, a plaintiff must prove (1) that the persons whose actions form the basis of the claim were agents and/or employees of the defendant employer; (2) that the agents and employees came into contact with members of the public in the course of their employer’s business; (3) that the employer failed to use reasonable care in the selection, supervision and retention of the agents and employees; and (4) that the failure to use such reasonable care was the proximate cause of harm to the plaintiffs. Limone v. United States, 497 F.Sup.2d 143, 233 (D.Mass. 2007), citing Carson v. Canning, 180 Mass. 461, 462 (1902); Foster, 26 Mass.App.Ct. at 290-91. “Most of the jurisdictions that have recognized the existence of this cause of action have held that liability exists on the part of the employer entirely independent of the employer’s liability under the principles of respondeat superior.” Foster, 26 Mass.App.Ct. at 291. Thus, whether the employee’s wrongful conduct was within the scope of his or her employment is generally not an issue in a negligent hiring or negligent retention action.
It may be that Dr. Nasif was not acting as an employee of the hospital, per se. However, the comparative analysis of a negligent credentialing claim and a negligent hiring or retention claim still has force, *548 because the duty of an employer to customers or clients is premised on a special relationship that may give rise to a common-law duty of the employer to safeguard patrons from an incompetent or dangerous employee. See Whittaker v. Saraceno, 418 Mass. 196, 198 (1994). In determining whether a special relationship exists between a plaintiff and a defendant, a key consideration is whether the “defendant reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so.” Coughlin v. Titus & Bean Graphics, Inc., 54 Mass.App.Ct. 633, 639 (2002), quoting Irwin v. Ware, 392 Mass. 745, 756 (1984).
A hospital could reasonably foresee that it is expected to protect its patients from incompetent or careless surgeons, and that its failure to do so will result in harm to its patients. A hospital does have a duty to exercise reasonable care in granting privileges to physicians who practice medicine at the hospital. Copithorne v. Framingham Union Hospital, 401 Mass. 860, 865-66 (1988). In this case, Dr. Nasif was assigned to treat the plaintiff by hospital personnel after the plaintiff was seen in the emergency department. It would be reasonable for Mr. Rabelo, or any other patient, to expect that a physician treating him at the hospital was competent and would comply with áll requisite standards of care. Thus, in this context at least, a “negligent credentialing” claim appears cognizable under Massachusetts law. See id.
II. Bifurcation
Bifurcation is entirely within the discretion of the trial judge. Dobos v. Driscoll, 404 Mass. 634, 645 (1989). It may be granted “when separate trials will be conducive to expedition and economy.” Mass.R.Civ.P. 42(b). The purpose of the rule permitting bifurcation is “the convenience of adjudication, the avoidance of prejudice and the interests of expedition and economy.” Roddy & McNulty Ins. Agency v. A.A. Proctor Co., Inc., 16 Mass.App.Ct. 525, 528 (1983). While the Supreme Judicial Court recognized in Dobos that there likely were “civil cases in which the refusal to grant separate trials would so prejudice a party that reversal is mandated,” it also found no cases in Massachusetts or any other jurisdiction where reversal was predicated upon a trial judge’s failure to bifurcate. Dobos, 404 Mass. at 644-45.
In general, the case law disfavors bifurcation, largely as a matter of judicial economy. In the context of common law and related G.L.c. 93A claims, the Appeals Court has held that “bifurcation of common law claim and c. 93A claim has little to commend it. Two trials result instead of one, although the underlying facts and the witnesses are substantially the same.” Wyler v. Bonnell Motors, Inc., 35 Mass.App.Ct. 563, 566 (1993). In another context, the Dobos case involved claims against a state police trooper and his supervisors. The defendant trooper had moved for the bifurcation, citing prejudice against him “from the anticipated admission in evidence of documents and testimony concerning his prior misconduct, as it might be relevant to his supervisor’s alleged failure to supervise.” Dobos, 404 Mass. at 644. Still, the SJC affirmed the trial court’s refusal to bifurcate.
In one of the leading out-of-state cases on bifurcating medical malpractice and negligent credentialing claims, the decision to bifurcate was grounded in concerns about prejudice. Shilling v. Humphrey, 916 N.E.2d 1029, 1036, 123 Ohio St.3d 387, 393 (Ohio 2009). Specifically, the concern in Shilling was that evidence admitted in the negligent credentialing case against the hospital regarding past problems with the defendant doctor’s conduct might prejudice the doctor in the medical malpractice action. Id. Here, however, it is the hospital moving for bifurcation, and Milford Regional has not proffered any reason why it would be prejudiced by having the matters heard together.
Milford Regional cites the Superior Court decision in DeJesus v. Nasif et al., allowing bifurcation, in support of its position. In that decision, the Court reasoned, “Allowing [plaintiff] DeJesus to conduct discovery on his diverse claim against [the hospital] for negligent credentialing prior to the adjudication of his medical malpractice claim would be complicated and wholly unnecessary if a jury were to find no negligence occurred.” Memorandum and Order on the Milford Regional Medical Center, Inc.’s Motion to Bifurcate and Stay Discovery, SUCV 10-4281-A, slip op. at 3 (January 17, 2012). It is undoubtedly true that discovery related to the negligent credentialing claim will add to the burdens of the parties in litigating this action. However, as the plaintiff argues, the alternative presents greater problems, such as the need to repeat much of the same discovery and need to re-depose many of the same witnesses several years after the events at issue, when the claims against Dr. Nasif are resolved. Given that the defendant hospital has shown no prejudice and concerns regarding judicial economy and convenience of adjudication may weigh in favor of a single trial, the motion to bifurcate the trial of defendant, Milford Regional’s claims from those of other defendants is deferred for a decision by the trial judge.
III. Discovery
The plaintiff argues that even if bifurcation of the trial of the claims against Dr. Nasif and Milford Regional were warranted, a stay of discovery is not necessary as it will unduly postpone discovery and delay resolution of the entire case. The plaintiff notes that Milford Regional credentialed (and recredentialed) Dr. Nasif despite readily available information about past and pending medical negligence lawsuits, the doctor’s failure on multiple occasions to pass board certification exams, the doctor’s failing eyesight, and the doctor’s failure to keep current with medical technology. (Opposition, p. 3.) The plaintiff *549 has appended to his opposition Consent Orders that detail Dr. Nasifs stipulation that he had committed malpractice on various occasions from 2000 through February 23, 2009, a period that encompasses the treatment of plaintiff in November 2008. Further, the plaintiffs opposition is supported by an affidavit of Steven Schafer, Esq., in which the attorney avers that he had discovered at least ten medical malpractice lawsuits filed against Dr. Nasif prior to November 2008, and another affidavit of Arthur A. Klein, M.D., also documenting numerous lawsuits and six “above average” settlements of claims by Dr. Nasif.
It cannot be known if the alleged actions of Dr. Nasif in these other cases would be admissible in the trial of this case, but discovery of information regarding Dr. Nasif prior to his conducting surgery on plaintiff may be relevant to plaintiffs claims against the doctor. It may bear on the doctor’s knowledge of the standard of care for treatment of plaintiffs condition, and the potential risk of injury to plaintiff from procedures that he recommended or performed.
While evidence of similar incidents should be admitted only with caution because the other incidents “may have been the consequence of idiosyncratic circumstances,” Read v. Mt. Tom Ski Area, Inc., 37 Mass.App.Ct. 901, 902 (1994), the admission of other incident evidence rests within the judge’s discretion. Such evidence is admissible if the court first determines that the jury could find a substantial similarity in circumstances. See Santos v. Chrysler Corp., 430 Mass. 198, 202 (1999); Kromhout v. Commonwealth, 398 Mass. 687, 693 (1986); Simmons v. Monarch Mach. Tool Co., 413 Mass. 205, 214 (1992). The judge also must determine that there is minimal danger of unfairness, confusion, and undue expenditure of time in the trial of collateral issues. See Kromhout, 398 Mass. at 693; Robitaille v. Netoco Cmty. Theater Co. of N. Attleboro, Inc., 305 Mass. 265, 269 (1940). Evidence of Dr. Nasifs treatment of other patients might be admissible against him to establish notice; to corroborate that the treatment rendered to this plaintiff was negligent; or to refute evidence that Dr. Nasifs treatment was within the standard of care (i.e., rebuttal evidence). Milford Regional may well have information regarding Dr. Nasif that is discoverable by the plaintiff in pursuit of its claim against the physician, i.e., relevant or likely to lead to admissible evidence. Mass.R.Civ.P. 26(b)(1).
There is similarity between this case and a case in which claims are brought against a tortfeasor and his insurer for unfair settlement practices. Milford Regional cannot be liable for negligent credentialing if Dr. Nasif were not negligent, or his negligence did not cause harm to the plaintiff, just as an insurer is not liable for unfair settlement practices where its insured is not liable. However, the issue of staying discovery in this case is distinguishable from cases involving claims against insurers for unfair settlement practices. Unfair settlement claims are essentially first party or third-party beneficiary contract claims that only arise where liability of an insured is reasonably clear. Lazaris v. Metropolitan Prop. and Cas. Ins. Co., 428 Mass. 502, 505 (1998). Where discovery is stayed in an unfair insurance settlement case, it is usually done to protect work product or the mental impressions of insurers from discovery and introduction at the trial of the underlying claim.
[T]here is a body of unpublished, single justice decisions from the Supreme Judicial Court and the Massachusetts Appeals Court that have, on interlocutory appeal, stayed proceedings and discovery in G.L.c. 93A litigation based upon G.L.c. 176D. These decisions note that a motion to sever G.L.c. 93A claims and stay discovery “is routinely allowed, if only to prevent discovery of the insurer’s impressions of the case based upon legal theory and privileged communications, and thereby prevent interference with the insured’s right to be adequately defended.” Kai v. Kim-Son, Appeals Court No. 98-M-65 (February 11, 1998) (Spina, J.).
Sanchez v. Witham, 2003 Mass.App.Div. 48, 51 (2003). There is no such concern in this case with respect to the credentialing file. In those cases, the insurers’ files contain notes of investigations conducted following the incident over which the suit is brought. In the present case, the plaintiff seeks information from a credentialing process conducted prior to the surgery that forms the basis of the plaintiffs claim. While there might be material in the credentialing file that would be prejudicial to Dr. Nasif in the underlying matter against him, there is no such concern in the case against the hospital, and Dr. Nasif has raised no objection of his own.
Milford Regional further argues that if discovery is not stayed, a time-consuming set of discovery motions will ensue due to issues including the alleged applicability of the medical peer review statute. The hospital argues that in staying discovery, the court in DeJesus v. Nasif considered that the “applicability” of the peer review statute meant discovery on the negligent credentialing claim would be complicated. It may be that this statute will protect certain materials from discovery. However, the fact that there will be issues to resolve in discovery is not a reason to stay discovery in its entirety.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Motion to Bifurcate and/or Stay Discovery is DENIED with respect to the request to stay discovery, and no action is taken on defendant, Milford Regional’s request to bifurcate the trial of the claims against it from those of the other defendants, that decision being reserved for the trial judge.