[Cite as *Walling v. Brenya*, 2021-Ohio-29.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Michael Walling, Administrator of the
Estate of Raeann Walling, Deceased

     Appellant

v.

Ransford S. Brenya, M.D., et al.

     Appellee

Court of Appeals No. L-19-1264

Trial Court No. CI0201502139

**DECISION AND JUDGMENT**

Decided:  January 8, 2021

* * * * *

Jeffrey T. Stewart and Robert M. Scott, for appellant.

James E. Brazeau and Kayla L. Henderson, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Michael Walling as Administrator for the Estate of Raeann

Walling, Deceased, appeals the judgment of the Lucas County Court of Common Pleas,

granting summary judgment in favor of appellee, The Toledo Hospital, on appellant's

claim for negligent credentialing.  For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} This matter arises from a medical malpractice claim brought by appellant against Dr. Ransford Brenya, Dr. Osama Al-Bawab, and The Toledo Clinic, Inc. Appellant alleged that Raeann Walling suffered a fatal pulmonary vein stenosis on April 26, 2014, as a consequence of Brenya's repeated and incompetent catheter ablation procedures in treating her catecholaminergic polymorphic ventricular tachycardia (CPVT)—a genetic condition characterized by a particular kind of atrial arrhythmia—and his negligent failure to recognize and address the stenosis.

{¶ 3} Based on information learned during discovery, appellant amended the complaint to include a negligent credentialing claim against appellee as an additional defendant. Upon the motion of appellee, the trial court bifurcated the negligent credentialing claim and stayed discovery pending the outcome of the underlying medical malpractice claim.

{¶ 4} The underlying claim proceeded to a multi-day jury trial commencing on January 28, 2019. During the trial, Brenya testified on cross-examination that he does not remember reviewing an x-ray taken of Raeann that showed a potential pulmonary venous obstruction. He agreed that not reviewing the records sent to him about a patient fell below the standard of care. Brenya further testified that had he seen the records, the reasonable standard of care would have been to order a CT scan, which he did not do. Moreover, because he did not order the CT scan, he did not discover the pulmonary vein stenosis, and consequently did not treat the pulmonary vein stenosis. Finally, Brenya

2.

testified that the moment he discovered the pulmonary vein stenosis, he referred Raeann right away to the University of Michigan. It was not long after the referral that Raeann showed signs of pulmonary hypertension and had an enlarged heart on the right side. Brenya agreed that those symptoms were what he would have tried to avoid with prompt treatment.

{¶ 5} Before the trial concluded, appellant entered into a settlement agreement with Brenya, Al-Bawab, and the Toledo Clinic.[1] In the signed release, appellant acknowledged that the released parties "have denied, and continue to deny, any wrongdoing or liability," but the released parties reciprocally acknowledged that appellant did not admit that the released parties were without fault. Furthermore, the release stated that nothing in it "shall be deemed to release or impair in any way the pending claims * * * against [appellee]," and that "This settlement and release is made in good faith specifically pursuant to ORC 2307.28, incorporating its provisions that this settlement does not discharge any other tortfeasor."

{¶ 6} Following the dismissal of the medical malpractice claims against Brenya, Al-Bawab, and the Toledo Clinic, appellee moved for summary judgment on appellant's claim of negligent credentialing. Appellee argued that to bring a negligent credentialing

---

[1] The settlement agreement is subject to a confidentiality provision, and for that reason, motions and filings in the record that refer to the settlement agreement have been filed under seal. To protect the confidentiality of the agreement, this court will refer to the agreement in a limited fashion, and only to the extent necessary to resolve the issues on appeal.

3.

claim, there must be a prior determination that the provider committed medical malpractice. Because such a determination was not made by the jury or stipulated to in the settlement agreement, appellee argued that appellant's claim must fail. Appellant responded that Brenya's testimony on cross-examination constituted a concession that he was negligent, and therefore appellant should be able to pursue the negligent credentialing claim against appellee.

{¶ 7} On October 9, 2019, the trial court entered its judgment finding that Brenya's "concession" on cross-examination did not constitute an adjudicated determination or stipulation that appellant's injuries were proximately caused by the doctor's negligence. Thus, the court granted summary judgment in favor of appellee, and dismissed appellant's claim with prejudice.

## II. Assignments of Error

{¶ 8} Appellant has timely appealed the trial court's October 9, 2019 judgment, and now asserts one assignment of error for our review:

1. The trial court erred when it granted Defendant-Appellee The Toledo Hospital's motion for summary judgment as to Plaintiff-Appellant's negligent credentialing claim where the defendant-doctor during trial in the underlying medical negligence case conceded on the record and under oath the essential elements of Plaintiff-Appellant's medical negligence claim and Plaintiff-Appellant subsequently settled his claim for medical negligence against the defendant-doctor prior to the jury's verdict.

4.

## III. Analysis

{¶ 9} We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 10} The question presented to us in this appeal is whether appellant can maintain a negligent credentialing claim against appellee where the defendant-doctor conceded on the record during the underlying trial the essential elements of a medical negligence claim,[2] but where the plaintiff settled his claim for medical negligence against the defendant-doctor prior to the jury verdict, and the settlement agreement did not stipulate that the plaintiff's injury was caused by the defendant-doctor's negligence.

{¶ 11} "To prove a negligent-credentialing claim, a plaintiff injured by the negligence of a staff doctor must show that but for the lack of care in the selection or retention of the doctor, the doctor would not have been granted staff privileges, and the

---

[2] For purposes of our analysis, we will assume that Brenya's testimony conceded all the essential elements of a medical negligence claim.

plaintiff would not have been injured." *Schelling v. Humphrey*, 123 Ohio St.3d 387, 2009-Ohio-4175, 916 N.E.2d 1029, ¶ 18. As part of proving the claim, the plaintiff must establish the underlying medical malpractice of the doctor. *Id.* at ¶ 19. "The required element of the plaintiff's injury having been caused by the doctor's malpractice goes to the question of whether the *hospital's* alleged negligent credentialing of the doctor proximately caused the plaintiff's injury." (Emphasis sic.) *Id.*

{¶ 12} In *Schelling*, the Ohio Supreme Court was asked to answer "whether a plaintiff can proceed on a negligent-credentialing claim against a hospital without a prior finding, either by adjudication or stipulation, that the plaintiff's injury was caused by the physician's malpractice." In *Schelling*, as here, the plaintiffs brought a medical malpractice claim against the defendant-doctor, and a negligent credentialing claim against the hospital. *Id.* at ¶ 5-6. Upon the motion of the hospital, the claims were bifurcated for trial. *Id.* at ¶ 7. Prior to trial, however, the defendant-doctor filed a petition for bankruptcy, and the case was stayed. *Id.* at ¶ 8. Thereafter, the plaintiffs dismissed the claim against the defendant-doctor without prejudice, acknowledging that a settlement was reached with the bankruptcy trustee. *Id.* The defendant-doctor was later granted a discharge in bankruptcy, thereby precluding any attempt by the plaintiffs to collect on the medical malpractice claim. *Id.* Notably, the bankruptcy court did not enter a finding that the defendant-doctor was negligent in his treatment of the plaintiff, and the defendant-doctor did not admit negligence. *Id.* at ¶ 9.

6.

{¶ 13} In answering the question presented to it, the Ohio Supreme Court held that "[I]n the usual case, either a plaintiff must obtain a prior determination that a doctor committed medical malpractice and that the malpractice proximately caused the plaintiff's injury or the doctor will be a party to the case that includes the negligent-credentialing claim against the hospital." *Id.* at ¶ 32. However, the Ohio Supreme Court recognized the unusual circumstances of the case before it and carved out an exception to the rule where the doctor "is no longer amenable to suit because of the bankruptcy stay and discharge, and the plaintiffs, through no fault of their own, cannot maintain their malpractice claim against him." *Id.* It is worth noting that the three justices who dissented from the majority in *Schelling* would not have created such an exception, and would have held that the plaintiffs could not pursue their negligent credentialing claim against the hospital. *Id.* at ¶ 36 (Lundberg Stratton, J., dissenting).

{¶ 14} In *Boggia v. Wood Cty. Hosp.*, 6th Dist. Wood No. WD-09-091, 2010-Ohio-4932, this court had an opportunity to apply *Schelling* to a case with a fact pattern similar to the one before us. In *Boggia*, the plaintiffs filed a medical malpractice claim against the doctor, and a negligent credentialing claim against the hospital. *Id.* at ¶ 1. The claims were bifurcated. *Id.* at ¶ 2. The plaintiffs then settled the medical malpractice claim with the doctor "without obtaining any concession from the doctor as to her alleged negligence/liability." *Id.* at ¶ 10. After the settlement, the hospital moved to dismiss the negligent credentialing claim. *Id.* ¶ 4. Applying *Schelling*, the trial court granted the hospital's motion and dismissed the action. On appeal, we affirmed. We reasoned that

7.

the exception recognized in *Schelling* did not apply, and that "while it may seem a harsh result, it was [plaintiffs] who agreed to enter into the settlement agreement thereby precluding any opportunity to prove malpractice on the part of [the doctor]." *Boggia* at ¶ 10.

{¶ 15} In support of his assignment of error, appellant now attempts to distinguish the present case from the facts in *Boggia*. In so doing, appellant latches onto our use of the word "concession," and argues that here, unlike in *Boggia*, the defendant-doctor conceded the essential elements of medical malpractice through his testimony on cross-examination. While Brenya's testimony did in fact address all of the elements of medical malpractice, we do not find that it constituted a "concession" as that term was used in *Boggia*.

{¶ 16} In *Boggia*, we used the word "concession" in the context of the plaintiffs' settlement of their malpractice claim. We noted that the plaintiffs "settled their malpractice claim against [the doctor] without obtaining any concession from the doctor as to her alleged negligence/liability." *Id.* at ¶ 10. In the next sentence, we remarked that "[t]o the contrary, in the release of all claims * * * [the doctor] 'denies any liability of any sort.'" *Id.* Thus, the type of concession being referred to in *Boggia* was a concession of liability as part of a settlement agreement, which is entirely consistent with the rule in *Schelling* that a plaintiff cannot maintain a negligent credentialing claim without a prior finding or determination, either by adjudication or stipulation, that the plaintiff's injury was proximately caused by the doctor's malpractice.

8.

{¶ 17} Here, we find that Brenya's testimony on cross-examination did not constitute a determination or stipulation that appellant's injury was caused by his malpractice. Rather than being a determination, Brenya's testimony was simply evidence that, but for the settlement, would have been presented to the jury. That evidence would have been weighed with and against other evidence—potentially including expert testimony as to causation—and may or may not have resulted in the jury's determination that Brenya was medically negligent and that his negligence proximately caused appellant's injury. For this reason, Brenya's testimony was likewise not a stipulation, as his medical malpractice was the issue that was being submitted to the jury for its determination. The fact that this case proceeded to trial does not distinguish it from *Boggia* because the trial was interrupted by the parties' settlement and thus never reached the point where a liability determination was made by the trier of fact. Furthermore, we find that, as in *Boggia*, the underlying defendants did not concede liability in the settlement agreement. Indeed, appellant acknowledged in the settlement agreement that the underlying defendants "have denied, and continue to deny, any wrongdoing or liability." Thus, we hold that Brenya's testimony on cross-examination does not distinguish this case from *Boggia*.

{¶ 18} Alternatively, appellant argues that the present case is distinguishable from *Boggia* because, here, the settlement agreement expressly relies on R.C. 2307.28, which provides that the release "does not discharge any of the other tortfeasors from liability for the injury, loss, or wrongful death unless its terms otherwise provide." Appellant

9.

concludes that the release does not operate to legally bar his claim against appellee. However, it is not the release of the underlying defendants that causes appellant's claim for negligent credentialing to fail, but rather it is appellant's inability to obtain a prior determination that Brenya's negligence proximately caused appellant's injuries. Thus, we find that appellant's incorporation of R.C. 2307.28 in the settlement agreement does not distinguish this case from *Boggia*.

{¶ 19} Finally, appellant argues that the facts and testimony provided in discovery and at trial present a likelihood of success on the merits. Notwithstanding the purported strength of appellant's case that appellee was negligent in providing credentials to Brenya, the rule set forth in *Schelling* requires that appellant "obtain a prior determination that a doctor committed medical malpractice and that the malpractice proximately caused the plaintiff's injury." *Schelling*, 123 Ohio St.3d 387, 2009-Ohio-4175, 916 N.E.2d 1029, at ¶ 32. Appellant, through his own decision to settle his claims against the underlying defendants without a stipulation that their medical malpractice caused his injuries, has failed to obtain such a determination.

{¶ 20} Therefore, we find that this case is analogous to *Boggia*, and we hold that the trial court did not err in granting summary judgment to appellee on appellant's claim of negligent credentialing where appellant failed to obtain a prior determination, whether through adjudication or stipulation, that Brenya's malpractice proximately caused appellant's injuries.

{¶ 21} Accordingly, appellant's assignment of error is not well-taken.

10.

## IV. Conclusion

{¶ 22} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Gene A. Zmuda, P.J.

_____
JUDGE

David A. D'Apolito, J.
CONCUR.

_____
JUDGE

Judge David A. D'Apolito, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.