**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Walling v. Brenya*, **Slip Opinion No. 2022-Ohio-4265.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4265

WALLING, ADMR., APPELLANT, *v.* BRENYA ET AL.; TOLEDO HOSPITAL,

APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Walling v. Brenya*, Slip Opinion No. 2022-Ohio-4265.]**

*Negligent credentialing—Negligent credentialing is a claim separate and independent from medical negligence, but a negligent-credentialing claim cannot proceed without either a simultaneous or a prior adjudication of or stipulation to medical negligence—Court of appeals' judgment affirmed.*

(No. 2021-0241—Submitted March 9, 2022—Decided December 1, 2022.)

APPEAL from the Court of Appeals for Lucas County,

No. L-19-1264, 2021-Ohio-29.

_____

DONNELLY, J.

**INTRODUCTION**

{¶ 1} The issue in this case is whether a hospital's granting staff privileges to a physician (i.e., credentialing a physician) confers a duty upon the hospital that

is separate from and independent of the duty the physician owes to the hospital's patients, and if so, whether a negligent-credentialing claim brought by a patient can proceed in the absence of a prior adjudication or stipulation that the physician was negligent in his care of the patient. We conclude that negligent credentialing is a separate and independent claim from medical negligence. Nevertheless, a negligent-credentialing claim cannot proceed without either a simultaneous or prior adjudication of or stipulation to medical negligence.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} Raeann Walling, the daughter of appellant, Michael Walling, was treated by Dr. Ransford Brenya at appellee, Toledo Hospital, where Dr. Brenya, a nonemployee of the hospital, held staff privileges. Raeann had a heart arrhythmia—catecholaminergic polymorphic ventricular tachycardia ("CPVT"), which Dr. Brenya treated by performing three cardiac ablations, two of which were done at Toledo Hospital. Raeann developed pulmonary-vein stenosis, which was undetected.

{¶ 3} At trial, Dr. Brenya testified on cross-examination that he had failed to review Raeann's chest x-rays, thereby missing the opportunity to detect a potential obstruction in her pulmonary veins. Furthermore, because he had failed to review Raeann's x-rays, Dr. Brenya also did not order a CT scan, which he testified would have been the standard of care had he been aware of the potential obstruction in Raeann's pulmonary veins that was revealed in the x-ray records. Thus, Raeann's pulmonary-vein stenosis was not discovered or treated as soon as it could have been. Raeann died on April 26, 2014. Walling, as administrator of Raeann's estate, filed suit against Dr. Brenya, alleging medical negligence, and against Toledo Hospital, alleging negligent credentialing.[1] The trial court granted Toledo Hospital's motion to bifurcate the claims. Four days into the trial, the

---

1. Walling's medical-negligence claims also included Dr. Osama Al-Bawab and the Toledo Clinic, Inc., as defendants.

parties settled the medical-negligence claims. The terms of the settlement are confidential. And while the trial court acknowledged "the wishes of the parties to preserve the confidentiality of their settlement agreement," it correctly noted in its judgment entry that "the record is devoid of any stipulation or other agreement that embodies a concession of liability or malpractice in connection with the care and treatment of Raeann Walling." The medical-negligence claims were dismissed with prejudice.

{¶ 4} Soon thereafter, Toledo Hospital moved for summary judgment on the negligent-credentialing claim. The trial court granted the motion, and Walling appealed. The court of appeals affirmed, concluding that summary judgment was correctly granted because Walling had "failed to obtain a prior determination, whether through adjudication or stipulation, that Brenya's malpractice proximately caused [Raeann's] injuries." 2021-Ohio-29, ¶ 20.

{¶ 5} We accepted Walling's discretionary appeal. 163 Ohio St.3d 1417, 2021-Ohio-1606, 167 N.E.3d 982.

**ANALYSIS**

{¶ 6} Because this case was decided on summary judgment, our review is de novo. *State ex rel. Yost v. Burns*, __ Ohio St.3d __, 2022-Ohio-1326, __ N.E.3d __, ¶ 9, citing *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29.

{¶ 7} We addressed a substantially similar issue in *Schelling v. Humphrey*, 123 Ohio St.3d 387, 2009-Ohio-4175, 916 N.E.2d 1029, ¶ 1, a case in which a doctor who performed foot surgeries was sued for medical negligence and the hospital where he had staff privileges was sued for negligent credentialing. *Id.* at ¶ 2, 6. After the doctor filed a petition in bankruptcy, the plaintiffs dismissed their medical-negligence claim against him, and the hospital moved to dismiss the negligent-credentialing claim. *Id.* at ¶ 3, 8. The trial court granted the hospital's motion to dismiss, but the Sixth District Court of Appeals reversed, "reject[ing] the

hospital's argument that a finding of the doctor's negligence is a legal prerequisite to a negligent-credentialing claim." *Id*. at ¶ 9-10.

{¶ 8} On appeal, we determined that the doctor's "lack of amenability to suit [did] not in and of itself extinguish the Schellings' negligent-credentialing claim against the hospital." *Id*. at ¶ 30. We noted that generally, a hospital "would not be required to defend against a negligent-credentialing claim before the physician's malpractice has been determined, either in a prior proceeding or as the first part of the case against both the doctor and the hospital." *Id.* at ¶ 26. Such bifurcation, we explained, "allows a negligent-credentialing claim against a hospital to be dismissed if the plaintiff does not prevail on the malpractice claim against the doctor." *Id*. at ¶ 28. Nevertheless, we concluded that "[u]nder the unusual circumstances of [the] case, where the bankruptcy proceedings impeded the Schellings from joining the physician as a party," the negligent-credentialing claim could still be prosecuted, but only after a determination that the doctor had been negligent. *Id*. at ¶ 30-31.

{¶ 9} In the case before us, Walling is asking us to revisit the holding in *Schelling* and, at a minimum, to expand it. Yet, as Walling concedes, the reasoning behind *Schelling* "remains sound," and therefore, we decline to extend its reach.

{¶ 10} Hospitals have a duty to "grant and continue staff privileges only to competent doctors." *Schelling*, 123 Ohio St.3d 387, 2009-Ohio-4175, 916 N.E.2d 1029, at ¶ 17, citing *Albain v. Flower Hosp*., 50 Ohio St.3d 251, 553 N.E.2d 1038 (1990), paragraph two of the syllabus, *overruled in part on other grounds by Clark v. Southview Hosp. & Family Ctr*., 68 Ohio St.3d 435, 628 N.E.2d 46 (1994). Negligent credentialing is not grounded in vicarious liability based on a doctor's liability for malpractice; rather, it is an independent claim that "stems from a hospital's direct duty to grant and continue staff privileges only to competent doctors." *Id*. at ¶ 30. Though a negligent-credentialing claim is independent, our caselaw is patently clear: negligent-credentialing claims are not viable in the

4

absence of medical negligence by the treating doctor. *See Schelling* at ¶ 19; *Browning v. Burt*, 66 Ohio St.3d 544, 566, 613 N.E.2d 993 (1993) (Moyer, C.J., concurring in part and dissenting in part).

**{¶ 11}** In *Schelling*, the issue before us was "whether a plaintiff can proceed on a negligent-credentialing claim against a hospital without a prior finding, either by adjudication or stipulation, that the plaintiff's injury was caused by the physician's malpractice." *Id*. at ¶ 11. As noted above, we said that, barring unusual circumstances, a plaintiff could not proceed without such a prior determination. *Id*. at ¶ 32. The proposition of law in this case posits, to the contrary, that a negligent-credentialing claim "can exist in the absence of a prior adjudication or stipulation that the physician was negligent."

**{¶ 12}** Walling argues that a prior adjudication or stipulation of medical negligence is not necessary in this case, because Dr. Brenya conceded the elements of negligence under cross-examination in the medical-negligence portion of the trial, which justifies an exception. We noted that *Schelling* was an exceptional case in that the doctor was not amenable to suit because of a bankruptcy stay and discharge. *Id*., 123 Ohio St.3d 387, 2009-Ohio-4175, 916 N.E.2d 1029, at ¶ 32. This case is not exceptional; Walling and Dr. Brenya decided to settle the underlying medical-negligence case. And Walling knew or should have known that one of the consequences of settling and dismissing the claim against Dr. Brenya without first obtaining a stipulation to negligence was the inability to pursue a negligent-credentialing claim against Toledo Hospital.[2] The foreclosing of the opportunity to pursue a negligent-credentialing claim may appear unduly restrictive; however, we made clear in *Schelling* that any plaintiff who settles a medical-negligence claim with a physician without obtaining a stipulation that the

---

2. Settling affects many interests. One of the most important for a doctor is to be done with the case. Being able to drag a doctor who has already settled with a patient back into a negligent-credentialing case might lead to fewer medical-negligence settlements.

physician was negligent is precluded from proceeding on a negligent-credentialing claim. And because negligent credentialing is an independent cause of action, even when a physician has stipulated to medical negligence, the plaintiff still has the burden of proving all the elements of a negligent-credentialing claim against the hospital at trial.

{¶ 13} For purposes of this opinion, we assume that Dr. Brenya's testimony during trial amounted to an admission that his treatment of Raeann Walling fell below the standard of care. Nonetheless, it should be obvious that an admission of this sort is not tantamount to a determination of negligence. For one thing, the admission was limited; as the trial court summarized, it did "not include the affirmative expressions of liability required to advance a negligent-credentialing claim." Also, any admission by Dr. Brenya did not address proximate cause. Moreover, the admission was not weighed and determined by the jury to be credible when balanced against a complete presentation of evidence. The settlement occurred before Walling had concluded his case and before Dr. Brenya had presented any of his own evidence. Nothing here convinces us that whatever admission Dr. Brenya made during the trial rises to the level of an adjudication of or stipulation to medical negligence.

{¶ 14} Walling's reliance on *Evans v. Akron Gen. Med. Ctr.*, 163 Ohio St.3d 284, 2020-Ohio-5535, 170 N.E.3d 1, to support his argument that *Schelling*'s exception to the prior-determination requirement should be expanded is also misplaced. In *Evans*, a doctor employed by the defendant hospital was alleged to have sexually abused a patient. *Id.* at ¶ 2. We held that "a plaintiff need not show that an employee has been adjudicated civilly liable or has been found guilty of a crime by a court in order for the plaintiff to maintain a negligent hiring, retention, or supervision claim against an employer." *Id.* at ¶ 10. Though there are some similarities between a negligent-credentialing claim and a negligent-hiring claim (none of which are relevant to our analysis here), there is at least one critical

6

difference that is dispositive of Walling's argument: a negligent-credentialing claim generally requires a prior finding of medical negligence against the physician, whereas a negligent-hiring claim does not require a prior finding of misconduct or negligence against the employee. We decline to expand the exception to *Schelling*'s prior-determination requirement based on a case with such a different proof requirement.

## CONCLUSION

{¶ 15} The caselaw is clear: a negligent-credentialing claim cannot proceed without either a simultaneous or prior adjudication of or stipulation that a doctor committed medical malpractice. Such an adjudication or stipulation was not present in this case.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, and DEWINE, JJ., concur.

BRUNNER, J., dissents, with an opinion joined by STEWART, J.

_____

**BRUNNER, J., dissenting.**

{¶ 16} The focus of this case should be whether Dr. Ransford Brenya's testimony during the initial portion of the bifurcated proceedings created a genuine issue of material fact such that appellant, Michael Walling, could present the medical-malpractice issue during the medical-credentialing portion of the trial. But today's decision instead raises the threshold for plaintiffs in negligent-credentialing cases beyond what is called for in our caselaw or justified by public policy. Therefore, I respectfully dissent.

{¶ 17} Walling cannot *prevail* on his negligent-credentialing claim against appellee, Toledo Hospital, without showing that Dr. Brenya's negligence was the proximate cause of Raeann Walling's death. I agree with the majority that our caselaw is "patently clear" as to that question. *See* majority opinion, ¶ 10. But I

disagree with the majority as to when and how the medical negligence and causation must be proved.

{¶ 18} In *Schelling v. Humphrey*, 123 Ohio St.3d 387, 2009-Ohio-4175, 916 N.E.2d 1029, we concluded that the physician's "lack of amenability to suit [did] not in and of itself extinguish the Schellings' negligent-credentialing claim against the hospital," *id.* at ¶ 30. We held that the Schellings could present their medical-malpractice claim against the physician "as an element of their negligent-credentialing claim against the hospital." *Id.* And we did so over the the hospital's argument that it would be unfair to require it to defend the malpractice claim against the physician. *Id.* at ¶ 25.

{¶ 19} The only distinction the majority raises between *Schelling* and this case is that that the Schellings were barred by a bankruptcy stay and discharge from pursuing their malpractice claim against the physician, *id.* at ¶ 32, whereas Walling had a hand in procuring Dr. Brenya's absence by entering into a confidential settlement and agreeing to dismiss the malpractice claim without obtaining a stipulation to Dr. Brenya's negligence. Majority opinion at ¶ 12. But the majority does not adequately explain why this distinction necessitates the result reached in this case. The *cause* of a physician's unavailability does not change the elements of the negligent-credentialing claim, the plaintiff's ultimate burden, or the hospital's obligation to present a defense.

{¶ 20} There is no explanation in the majority's opinion, nor support in our precedent, for creating the heightened summary-judgment standard that the majority endorses today for negligent-credentialing claims to survive. When ruling on a hospital's summary-judgment motion, the trial court makes a determination as to whether a hospital is entitled to judgment as a matter of law. Civ.R. 56(C). If in a bifurcated case the plaintiff cannot establish liability against the physician, then the plaintiff is bound by that determination and cannot, as a matter of law, establish the underlying medical-malpractice element in the negligent-credentialing claim.

**{¶ 21}** If there is no *prior determination* regarding the physician's liability, that does not mean that medical malpractice cannot be established. When no prior determination has been made with respect to negligence and causation, a summary-judgment motion tests whether the evidence presents a genuine issue of material fact as to the underlying malpractice claim, and in ruling on that motion, the court must view the evidence in a light most favorable to the nonmoving party, Civ.R. 56(C). Under the majority's heightened standard, a plaintiff must now first *prove* the underlying malpractice in order to survive summary judgment on the negligent-credentialing claim. This needlessly limits a plaintiff's ability to pursue claims against both the physician and the hospital and in turn may unreasonably limit the recovery and accountability objectives behind medical-malpractice and negligent-credentialing claims.

STEWART, J., concurs in the foregoing opinion.

_____

Johnson Law, P.L.C., and Jeffrey T. Stewart, for appellant.

Robison, Curphey & O'Connell, L.L.C., James E. Brazeau, and Kayla L. Henderson, for appellee.

Bricker & Eckler, L.L.P., Anne Marie Sferra, and Brodi J. Conover; and Epstein Becker & Green, P.C., and Victoria F. McCurdy, urging affirmance for amici curiae, Ohio Hospital Association and Ohio Association of Civil Trial Attorneys.

_____